STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

PACKAGING GRAPHICS, LLC
and JOHN A. DENSON,
Plaintiffs,

v.

C.A. No.

ROHRER CORPORATION and
JOHN P. ROHRER,
Defendants.

## VERIFIED COMPLAINT

Now come Plaintiffs, Packaging Graphics, LLC and John A. Denson, and for their Complaint against Defendants, Rohrer Corporation and John P. Rohrer, allege as follows:

### Nature of the Action

1. Plaintiff Packaging Graphics, LLC (a manufacturer and seller of packaging materials) and one of its salesman (John A. Denson) bring this action for, among other things, defamation and tortious interference with advantageous business relations based on a letter sent by Defendant Rohrer Corporation's Chairman, John P. Rohrer, to dozens of Plaintiffs' clients and prospective clients, in which Mr. Rohrer maliciously made false statements, among others (as described more fully herein), that Mr. Denson, with the assistance of Packaging Graphics, was in violation of a restrictive covenant contained in his employment agreement with his former employer Rohrer Corporation, and was barred by law from selling any kind of products to them.

2. The statements contained within the letter were wholly false and made with the malicious intent of causing damage to Plaintiffs' respective reputations and to damage their business. Accordingly, Plaintiffs bring this action seeking injunctive and monetary relief for the damages and irreparable harm suffered by them as a result of Defendants' wrongful actions.

## The Parties

3. Plaintiff Packaging Graphics, LLC ("Packaging Graphics"), is a limited liability corporation duly incorporated under Rhode Island law and located in Pawtucket, Rhode Island.

4. Plaintiff, John A. Denson, is a natural person who resides in Noank, Connecticut. Mr. Denson is employed as a sales representative for Packaging Graphics and works out of its Rhode Island offices. Mr. Denson was, at one time, a sales representative for Rohrer Corporation.

5. Upon information and belief, Defendant Rohrer Corporation is an Ohio corporation, located in Wadsworth, Ohio. Rohrer Corporation is a competitor of Packaging Graphics that at one time employed Defendant Mr. Denson pursuant to a written employment agreement, as described more fully below.

6. Defendant John P. Rohrer is a natural person who, upon information and belief, resides in Akron, Ohio. Mr. Rohrer is the Chairman of the Board and Chief Executive Officer of Rohrer Corporation.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction over this dispute as the amount in dispute exceeds $5,000.00, exclusive of interest and costs, and involves a claim for injunctive relief.

8. This Court has personal jurisdiction over the Defendants, as Defendants have intentionally engaged in tortious conduct designed to cause harm within the State of Rhode Island and thus could reasonably expect to be haled into court in Rhode Island.

9. Venue is proper in this Court, as Plaintiff Packaging Graphics resides within this district and a significant amount of the events at issue occurred within this district.



RECEIVED TIME MAY. 16. 10:16AM

## Facts Common To All Counts

A. Mr. Denson's Employment Agreement with Rohrer Corporation

10. On June 22, 2004, Plaintiff Mr. Denson entered into an Employment Agreement with Defendant Rohrer Corporation (the "Agreement"), whereby Plaintiff Mr. Denson was employed as the Regional Sales Manager for Defendant Rohrer Corporation for the Northeast portion of the United States. (A copy of the Agreement is annexed hereto as Exhibit A). The Agreement specifically provided, among other things, for the level at which Mr. Denson would be compensated and further provided that the Agreement would be in place for the term of one year.

11. The Agreement further provided:

> The Employee recognizes that as a result of his employment by the Company he will obtain confidential information relating to the Company, its business, customers, and plans. Consequently, the Employee covenants and agrees that for a period of *two years* after the termination of his employment whether by termination of this or any successor Agreement, by wrongful discharge, voluntary termination, or otherwise, the Employee shall not, directly or indirectly, within the existing marketing area of the Company, engage, alone or as an officer, employee, partner, agent, joint venture, director, or shareholder, in the solicitation of any entity with whom the Company has done business within the two (2) year period immediately preceding the termination of the Employee's employment, ***for the purpose of making sales of skin or blister packaging cards, to that entity***, regardless of whether such entity has been personally contacted in the past by the Employee.

(*Emphasis added*).

12. During the late Spring of 2005, Mr. Denson left the employ of Rohrer Corporation.

13. "Skin or blister packaging cards" refers to a specific kind of packaging that is manufactured and sold by each of Rohrer Corporation and Packaging Graphics. However, skin or blister packaging cards represent only a portion of Packaging Graphics' business, as it also sells a wide variety of other packaging and printing products.

14. In late 2005, Mr. Denson began work for Packaging Graphics as a sales representative. In connection with his attempts to sell products of Packaging Graphics, Mr. Denson has been entirely aware of his obligations under the Agreement and, at no time, has he violated them by soliciting any Rohrer Corporation customers for the purpose of making sales of skin or blister packaging cards.

B. The Ohio Litigations

15. On March 31, 2006, Defendant Rohrer Corporation initiated an action in the Ohio Court of Common Pleas, Medina County, Ohio, asserting that Plaintiff Mr. Denson has violated the Agreement by soliciting Rohrer Corporation's customers (the "Ohio Action"). Packaging Graphics immediately removed the Ohio Action to Federal Court based on diversity of jurisdiction and filed a Motion to Dismiss for Lack of Personal Jurisdiction, asserting that the Court lacked personal jurisdiction over Mr. Denson (who lives in Connecticut and sells in the northeast) or Packaging Graphics (which is located in Rhode Island and does virtually no business in Ohio) (the "Ohio Federal Court Action").

16. In each of the Ohio actions, Rohrer Corporation moved for a temporary restraining order and preliminary injunction, taking the position that the Agreement should be interpreted to prohibit Mr. Denson from soliciting any of Rohrer Corporation's clients for any purpose whatsoever, and that such requested injunction should not be limited to "sales of skin or blister packaging cards," as specifically set out in the Agreement.



RECEIVED TIME MAY.16. 10:16AM

17. The Ohio Federal Court rejected this argument, ultimately entering a Consent Temporary Restraining Order that simply mirrored the specific limitations relating to solicitations contained within the Agreement, "for the purpose of making sales of skin or blister packaging cards."

18. The Ohio Federal Court has further informed the parties that it will not hear Rohrer Corporation's Motion for a Preliminary Injunction until the Motion to Dismiss for lack of personal jurisdiction of Packaging Graphics and Mr. Denson is briefed and decided by the Court. Again, Mr. Denson and Packaging Graphics base their Motion to Dismiss in the Ohio Federal Court Action on their contention that neither of them have sufficient minimum contacts with Ohio for the Court to have personal jurisdiction over them.

C. <u>The False and Defamatory May 1, 2006 Letter</u>

19. Upon information and belief, on May 1, 2006, Mr. Rohrer caused a letter to be sent out on behalf of the Rohrer Corporation to approximately sixty-six of its customers and former customers (the "May 1st Letter"). (A copy of the May 1st Letter is annexed hereto as <u>Exhibit B</u>).

20. The "re" line of the May 1st Letter read "John Denson." The May 1st Letter made a number of statements that were false and defamatory, among them the following:

> "our salesmen, like John Denson (the gentleman who formerly handled your account with Rohrer), had an employment agreement with us that acknowledged our customers' importance, and restricted him from making sales calls on them for two years, if he left our company."

This statement is clearly false, as the Agreement placed no such restriction on Mr. Denson, but, as determined in the Ohio Federal Court Action, merely prohibited him from soliciting clients "for the purpose of making sales of skin or blister packaging cards."



RECEIVED TIME MAY.16. 10:16AM

21. The May 1st Letter continues with the further false and defamatory statement:

> "Recently, he joined Packaging Graphics, LLC in Pawtucket, Rhode Island. He began calling on our customers, in direct violation of his agreement, and, regrettably, we had to take legal action against him."

This statement, too, is false and defamatory. As is clear from the language of the Agreement (which Rohrer did not share with his customers) the restriction on Mr. Denson's ability to solicit customers only extends to "the purpose of making sales of skin or blister packaging cards." Mr. Denson simply has not, at any time, violated the Agreement.

22. The May 1st Letter further makes the following false and defamatory statement:

> "Until this litigation is completed in the months to follow, the Order approved by the Court prohibits Mr. Denson from selling skin or blister packing cards to our customers."

This statement, too, is plainly false on its face. Neither the Order nor the Agreement bars Mr. Denson from *selling* skin or blister packaging cards to customers, but instead, restricts only certain types of solicitation, as the limitation falsely described in Rohrer's letter would violate public policy by not allowing customers to pick the service providers of their choice.

23. Finally, the May 1st Letter refers to "Mr. Denson's unfortunate decision to violate his agreement with us." This statement is also false and defamatory.

24. The above-excerpted statements have severely damaged the business reputations of each of the Plaintiffs by falsely suggesting that each of them has acted unethically and in disregard of their legal obligations.

25. Defendants have also placed Plaintiff in the untenable position of being unable to meaningfully respond to these malicious and false attacks, as to do so would inevitably be argued by Defendants to be a violation of Mr. Denson's Agreement, as it is their unsupported position that Mr. Denson is barred from contacting these customers for any purpose.



RECEIVED TIME MAY. 16. 10:16AM

26. Defendants made these false and defamatory statements with malice and with full knowledge of their falsity.

27. The false and defamatory statements contained within the May 1st Letter have damaged Plaintiffs and will cause Plaintiffs irreparable harm if they are not retracted.

**Count I**
**Defamation/Libel**

28. Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 27 of the Verified Complaint as if fully set forth herein.

29. Defendants' statements in the May 1st Letter were of and concerning Plaintiffs.

30. Defendants' statements in the May 1st Letter were false, as described above.

31. Defendants' statements in the May 1st Letter constitute defamation of Plaintiffs.

32. Defendants published the false and defamatory statements contained within the May 1st Letter by sending it to numerous third parties.

33. Defendants' false and defamatory statements were published without any privilege or justification.

34. Defendants' false statements were injurious to Plaintiffs' reputations, so as to constitute libel *per se*.

35. As a result of this conduct, Plaintiffs have suffered and continue to suffer damages.

**Count II**
**Tortious Interference with Advantageous Relations**

36. Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 35 of the Verified Complaint as if fully set forth herein.

37. Plaintiffs have numerous business relationships and prospective business relationships which are known to Defendants.

38. Defendants are intentionally and unjustifiably interfering with those relationships by publishing false statements about Plaintiffs, as described above.

39. As a direct and proximate result of this intentional and unjustified interference, Plaintiffs have suffered damages for which Defendants are liable.

**Count III**
**Unfair Competition**

40. Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 39 of the Verified Complaint as if fully set forth herein.

41. Defendants' wrongful actions, as described above, constitute unfair competition.

42. As a direct and proximate result of Defendants' conduct, Defendants have and will continue to unlawfully procure business that it would not otherwise obtain fairly in the open market.

43. Defendants' unfair competition has and is continuing to cause Plaintiffs irreparable harm.

WHEREFORE, Plaintiffs, Packaging Graphics, LLC and John A. Denson, seek judgment against the Defendants, Rohrer Corporation and John P. Rohrer:

a. enjoining Defendants from further disseminating or publishing the false statements contained within the May 1st Letter;

b. mandatorily enjoining Defendants by requiring them to publish a letter of retraction, approved by the Court, to the customers that it sent the May 1st Letter;

c. awarding Plaintiffs compensatory damages in an amount to be determined at trial;

d. awarding Plaintiffs punitive damages in an amount to be determined at trial for Defendants' egregious conduct; and

e. granting such further relief as the Court deems just and appropriate.

PACKAGING GRAPHICS, LLC
and JOHN A. DENSON,

By Their Attorneys,

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 31-5787

Date: May 16, 2006

**Jury Demand**

Plaintiffs hereby request a jury trial on all claims so triable. Charles S. Beal is designated trial counsel.

Charles S. Beal



RECEIVED TIME MAY.16. 10:16AM

**VERIFICATION**

I, Nicholas Carafa, upon oath, depose and state as follows:

1. I am President of Packaging Graphic, LLC and have personal knowledge of the facts set forth in the within Verified Complaint; and

2. I have read the within Verified Complaint and believe the allegations contained therein to be true and correct to the best of my knowledge and information, and so far as upon information and belief, I believe the information to be true.

NICHOLAS CARAFA

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Subscribed and sworn to before me this 15 day of May, 2006.

Notary Public
My Commission expires: 12-2006

G:\cab\PackagingGraphics\pldgs\verifiedcomplaint.doc

# EXHIBIT A

# Employment Agreement

**THIS AGREEMENT** made and entered into this 22 day of June, 2004 at Wadsworth, Ohio, by and between John A. Denson, hereinafter referred to as "Employee", and ROHRER CORPORATION, an Ohio corporation, hereinafter referred to as "the Company".

In consideration of the mutual promises, covenants, and agreements herein contained, it is agreed as follows:

I. **DUTIES.** The Company does hereby employ the Employee as Regional Sales Manager, and the Employee does hereby accept such employment, and agrees to perform the duties of such office in an efficient, trustworthy, and businesslike manner.

II. **TERM.** This Agreement shall commence as of the date first above mentioned, and shall continue for a period of one year.

III. **COMPENSATION.** The Company shall pay to the Employee as compensation the sum of Thirty Thousand Dollars and 00/100 ($ 30,000.00) annually, and shall provide an automobile for the Employee's use. The Employee shall be further compensated by receiving a 1.0% commission on Medo, a 1.0% commission on Hayloft Enterprises, Inc. and a 1.5% commission on thermoforming, 8% on new printing customers for the first 12 months, and 2% on all other sales. A bonus will be paid for a 10% increase in sales of an additional 1% over $4,848,715.08.

IV. **EMPLOYEE BENEFITS.** The Employee may be entitled to participate in any qualified pension plan, group term life insurance plan, and any other employee benefit plan which may be established by the Company, such participation to be in accordance with the terms of any such plan.



RECEIVED TIME MAY.16. 10:16AM

V. **REIMBURSEMENT OF EMPLOYEE EXPENSES.** The Employee is authorized to incur reasonable business expenses for promoting the business of the Company, according to the latest Company Policy Manual, including expenditures for entertainment and travel. The Company, in accordance with the rules and regulations which it may issue from time to time, shall reimburse the Employee for reasonable business expenses incurred in the performance of his duties.

VI. **COMPETITION.** The Employee agrees that, during the term of this Agreement, he will devote all of his time and effort to his employment with the Company, and without the prior express authorization of the Company's Board of Directors, the Employee shall not, directly or indirectly, during the term of this Agreement, engage in any activity competitive with or adverse to the Company's business, whether alone, as a partner, or as an officer, shareholder, or employee of any other corporation.

VII. **BUSINESS DISCLOSURES.** The Employee agrees that, during the term of his employment by the Company, or thereafter, he will not disclose, other than to an employee of the Company, any confidential information as to the Company, including any information relative to the Company's business, trade, or industrial practice or trade secrets or know-how, without prior express authorization of the Company's Board of Directors, and, further, the Employee agrees that, upon termination of his employment for any reason, he shall not remove or retain without the prior express authorization of the Company's Board of Directors, any figures, calculations, or any other type of confidential information, of any type or description.

VIII. **TERMINATION.** This Agreement may be terminated upon any of the following:

A. This Agreement may be terminated by either party giving thirty (30) calendar days' written notice of termination to the other party. Such termination shall not prejudice any other remedy to which either party shall be entitled, either at law, in equity, or under this Agreement.

B. If the Employee becomes permanently disabled because of sickness, physical or mental disability, or any other reason, so that it reasonably appears that he will be unable to complete his duties under this Agreement, the Company shall have the option to immediately terminate this Agreement by giving written notice of termination to the Employee. Such termination shall be without prejudice to any right or remedy to which the Employee shall be entitled, either at law, in equity, or under this Agreement, including any salary continuation plan under which the Employee may be covered pursuant to Paragraph IV hereof.

C. If the Employee willfully breaches or habitually neglects the duties which he is required to perform under the terms of this Agreement, the Company may, at its option, immediately terminate this Agreement by giving written notice of termination to the Employee, without prejudice to any other remedy to which the Company may be entitled, either at law, or under this Agreement.

D. In the event of the termination of this Agreement prior to the completion of the term of employment specified herein, the Employee shall be entitled to the compensation, including accrued benefits (according to the latest Company Policy and Procedures Manual), earned by him prior to the date of termination as provided for in this Agreement, computed pro rata, up to and including that date, together with a total of thirty (30) days' severance pay (such severance pay to be due only in the event of termination by the

Company); the Employee shall be entitled to no further compensation as of the date of termination.

E. In the event of the termination of this Agreement for any reason, the Employee shall return all books, records, supplies and other property furnished to him/her by the Company; including the automobile provided for the Employee's use, in accordance with the instructions of the Company. Failure by the Employee to return such property in accordance with such instructions shall result in forfeiture of whatever benefits to which the Employee may be entitled under this Agreement upon termination.

IX. <u>RESTRICTIVE COVENANT</u>. The Employee recognizes that as a result of his employment by the Company he will obtain confidential information relating to the Company, its business, customers, and plans. Consequently, the Employee covenants and agrees that for a period of <u>two years</u> after the termination of his employment whether by termination of this or any successor Agreement, by wrongful discharge, voluntary termination, or otherwise, the Employee shall not, directly or indirectly, within the existing marketing area of the Company, engage, alone or as an officer, employee, partner, agent, joint venture, director, or shareholder, in the solicitation of any entity with whom the Company has done business within the two (2) year period immediately preceding the termination of the Employee's employment, for the purpose of making sales of skin or blister packaging cards, to that entity, ~~regardless of whether such entity has been personally contacted in the past by the Employee.~~ The term "doing business" for purposes of this Agreement includes, but is not limited to the following: sales by the Company to any entity, and solicitation of whatever nature or description by the Company to any entity. These covenants on the part of the

Employee shall be construed as an agreement independent of any other provision of this Agreement; and the existence of any claim or cause of action of the Employee against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of this covenant. The Employee further agrees that these covenants are divisible, and, in the event that a court construes these covenants as broader than is reasonably necessary for the protection of the business of the Company, a court may impose such lesser period of time or area, as it may deem proper under the circumstances.

X. **ENTIRE AGREEMENT.** This Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto with respect to the employment of the Employee by the Company, and contains all of the covenants and agreement between the parties with respect to such employment in any manner whatsoever.

XI. **LAW GOVERNING.** This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

XII. **NOTICES.** Any notices to be given thereunder by any party to the other may be effected by personal delivery in writing or by mail, registered or certified, postage prepaid, with return receipt requested. Mailed notices shall be addressed to the parties at the following addresses:

COMPANY: Rohrer Corporation
717 Seville Road
P.O. Box 1009
Wadsworth, OH 44282

EMPLOYEE: John A. Denson
52 Brookview
Noank, CT 06340

Notices delivered personally shall be deemed communicated as of actual receipt; mailed notices shall be deemed communicated as of three (3) days after mailing.

**IN WITNESS WHEREOF**; the parties hereto have set their hands on the day and year first above written.

**WITNESSED BY:**

**ROHRER CORPORATION**

By ______

Its President

John P. Rohrer "Company"

**WITNESSED BY:**

John A. Denson "Employee"



RECEIVED TIME MAY.16. 10:16AM

# ROHRER CORPORATION
**SPECIALISTS IN CARDED PACKAGING AND THERMOFORMING**

May 1, 2006

Trend Business Forms
Attn: Bob O' Donnell
PO Box 66
Vernon, VT 05354

***Re: John Denson***

Dear Bob O' Donnell,

Business success today revolves largely around people and relationships. Rohrer Corporation has done business with your company for years, and we value our association with you. Preserving that relationship is important to us, and that is why our salesmen, like John Denson (the gentleman who formerly handled your account with Rohrer) had an employment agreement with us that acknowledged our customers' importance, and restricted him from making sales calls on them for two years, if he left our company.

Mr. Denson voluntarily left our employ May 31, 2005. Recently, he joined Packaging Graphics, LLC in Pawtucket, Rhode Island. He began calling on our customers, in direct violation of his agreement, and, regrettably, we had to take legal action against him. As a result, a Federal Court has approved an Order that enjoins and restrains him from:

1. Directly or indirectly soliciting any entity that he solicited during the two-year period immediately preceding the termination of his employment at Rohrer Corporation, for the purpose of making sales of skin or blister packaging cards;

2. Directly or indirectly disclosing any of Rohrer Corporation's proprietary or confidential information.

In addition, the parties are currently in litigation about the commercial reality of whether Mr. Denson's restriction regarding the sale of skin or blister packaging cards logically extends to the sales of plastic products, including blisters, clamshells, and other thermoform products. Until this litigation is completed in the months to follow, the Order approved by the Court prohibits Mr. Denson from selling skin or blister packaging

717 Seville Road • P.O. Box 1009 • Wadsworth, Ohio 44282
Phone: 330-335-1541 • Fax: 330-336-5147 • Web Site: www.rohrer.com • E-mail: info@rohrer.com

May 1, 2006
Page 2

cards to our customers. It is unfortunate that we had to take these steps, but we cannot ignore such a direct threat to our business, from someone who possesses valuable and confidential information about us that would otherwise enable him to compete unfairly.

We do not expect that you will be involved in this litigation, or that it will interfere with our ability to service your account in any way. Indeed, we will continue to take and fill your orders for printing, skin or blister packaging cards, blisters, clamshells, and other thermoform products, with the highest levels of service and quality, just as we did prior to Mr. Denson's unfortunate decision to violate his agreement with us. We ask your cooperation and understanding during this time, and if you have any questions, please feel free to contact John Blair, Sales Manager. Your business is important to us, and we value our relationship greatly.

Thank you for your consideration.

Best regards,

ROHRER CORPORATION

John P. Rohrer
Chairman/CEO

JPR:dm