UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PACKAGING GRAPHICS, LLC and JOHN A. DENSON, Plaintiffs, | : | |
| v. | : | C.A. No. 06-230ML |
| ROHRER CORPORATION and JOHN P. ROHRER, Defendants. | : | |

**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Now come Plaintiffs, Packaging Graphics, LLC and John A. Denson (the "Plaintiffs"), and move this Honorable Court for a Preliminary Injunction barring Defendants, Rohrer Corporation and John P. Rohrer ("Defendants"), from making further malicious false representations, statements and assertions regarding Plaintiffs' business practices and requesting mandatory injunctive relief, as described in the Memorandum of Law filed simultaneously herewith. As grounds for its Motion, Plaintiffs rely on the Verified Complaint filed in the Providence County Superior Court and removed to this Court on May 17, 2006 and the Memorandum of Law filed herewith.

PACKAGING GRAPHICS, LLC
and JOHN A. DENSON,

By Their Attorneys,

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: May 26, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of May, 2006, a true copy of the within was hand-delivered to the following:

Daniel K. Kinder, Esq.
Little Medeiros Kinder Bulman & Whitney PC
72 Pine Street
Providence, RI 02903

____________________________

G:\csb\PackagingGraphics\pldgs\mopreliminj.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PACKAGING GRAPHICS, LLC<br>and JOHN A. DENSON,<br>Plaintiffs, | : | |
| v. | : | C.A. No. 06-230ML |
| ROHRER CORPORATION and<br>JOHN P. ROHRER,<br>Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs, Packaging Graphics, LLC ("Packaging Graphics") and John A. Denson ("Mr. Denson") (collectively, the "Plaintiffs"), respectfully submit this Memorandum of Law in support of their Motion for a Preliminary Injunction.

**Preliminary Statement**

Plaintiff Packaging Graphics, LLC (a manufacturer and seller of packaging materials) and one of its salesman (John A. Denson) seek injunctive relief as a result of a false and defamatory letter sent by Defendant Rohrer Corporation's Chairman, John P. Rohrer, to dozens of Plaintiffs' clients and prospective clients, in which Mr. Rohrer falsely stated (as described more fully herein), that Mr. Denson, with the assistance of Packaging Graphics, was in violation of a restrictive covenant contained in his employment agreement with his former employer Rohrer Corporation, and falsely stated that Mr. Denson was barred by law from selling any kind of products to them.

The statements contained within the letter were wholly false, were known to be false by Defendants, were maliciously made and are causing and continue to cause irreparable harm to Plaintiffs and their business. Accordingly, Plaintiffs bring this Motion seeking injunctive relief due to the irreparable harm suffered by them as a result of Defendants' wrongful actions.

## Facts Common To All Counts

A. Mr. Denson's Employment Agreement with Rohrer Corporation

On June 22, 2004, Plaintiff Mr. Denson entered into an Employment Agreement with Defendant Rohrer Corporation (the "Agreement"), whereby Plaintiff Mr. Denson was employed as the Regional Sales Manager for Defendant Rohrer Corporation for the Northeast portion of the United States. (A copy of the Agreement is annexed to the Verified Complaint as Exhibit A). The Agreement specifically provided, among other things, for the level at which Mr. Denson would be compensated and further provided that the Agreement would be in place for the term of one year. (Verified Complaint, ¶ 10).

The Agreement further provided:

> The Employee recognizes that as a result of his employment by the Company he will obtain confidential information relating to the Company, its business, customers, and plans. Consequently, the Employee covenants and agrees that for a period of *two years* after the termination of his employment whether by termination of this or any successor Agreement, by wrongful discharge, voluntary termination, or otherwise, the Employee shall not, directly or indirectly, within the existing marketing area of the Company, engage, alone or as an officer, employee, partner, agent, joint venture, director, or shareholder, in the solicitation of any entity with whom the Company has done business within the two (2) year period immediately preceding the termination of the Employee's employment, ***for the purpose of making sales of skin or blister packaging cards, to that entity***, regardless of whether such entity has been personally contacted in the past by the Employee.

(Verified Complaint, ¶ 11; *emphasis added*).

During the late Spring of 2005, Mr. Denson left the employ of Rohrer Corporation. (*Id.*, ¶ 12).

In late 2005, Mr. Denson began work for Packaging Graphics as a sales representative. In connection with his attempts to sell products of Packaging Graphics, Mr. Denson has been entirely aware of his obligations under the Agreement and, at no time, has he violated them by soliciting any Rohrer Corporation customers for the purpose of making sales of skin or blister packaging cards. (*Id.*, ¶ 14).

The "skin or blister packaging cards" referred to in the Agreement described a specific kind of packaging that is manufactured and sold by each of Rohrer Corporation and Packaging Graphics. However, skin or blister packaging cards represents only a portion of Packaging Graphics' business, as it also sells a wide variety of other packaging and printing products. (*Id.*, ¶ 13).

B. The Ohio Litigations

On March 31, 2006, Defendant Rohrer Corporation initiated an action in the Ohio Court of Common Pleas, Medina County, Ohio, asserting that Plaintiff Mr. Denson has violated the Agreement by soliciting Rohrer Corporation's customers (the "Ohio Action"). Packaging Graphics quickly removed the Ohio Action to Federal Court based on diversity of citizenship and filed a Motion to Dismiss for Lack of Personal Jurisdiction, asserting that the Court lacked personal jurisdiction over Mr. Denson (who lives in Connecticut and sells exclusively in the northeast) or Packaging Graphics (which is located in Rhode Island and does virtually no business in Ohio) (the "Ohio Federal Court Action"). (*Id.*, ¶ 15).

In each of the Ohio actions, Rohrer Corporation moved for a temporary restraining order and preliminary injunction, taking the position that the Agreement should be interpreted to prohibit Mr. Denson from soliciting any of Rohrer Corporation's clients for any purpose whatsoever, and that such relief should not be limited to "sales of skin or blister packaging cards," as specifically set out in the Agreement. (*Id.*, ¶ 16).

The Ohio Federal Court rejected this argument, ultimately entering a Consent Temporary Restraining Order that simply mirrored the specific limitations relating to solicitations contained within the Agreement containing the language, "for the purpose of making sales of skin or blister packaging cards." (*Id.*, ¶ 17).

The Ohio Federal Court has further informed the parties that it will not hear Rohrer Corporation's Motion for a Preliminary Injunction until the Motion to Dismiss for lack of personal jurisdiction of Packaging Graphics and Mr. Denson is briefed and decided by the Court. Again, Mr. Denson and Packaging Graphics base their Motion to Dismiss in the Ohio Federal Court Action on their contention that neither of them have sufficient minimum contacts with Ohio for the Court to have personal jurisdiction over them. (*Id.*, ¶ 18).

C. The False and Defamatory May 1, 2006 Letter

Upon information and belief, on May 1, 2006, Mr. Rohrer caused a letter to be sent out on behalf of the Rohrer Corporation to approximately sixty-six of its customers and former customers (the "May 1st Letter"). (A copy of sample of the May 1st Letter is annexed to the Verified Complaint as Exhibit B). (*Id.*, ¶ 19).

The "re" line of the May 1st Letter read "John Denson." The May 1st Letter made a number of statements that were false and defamatory, among them the following:

> "our salesmen, like John Denson (the gentleman who formerly handled your account with Rohrer), had an employment agreement with us that acknowledged our customers' importance, and restricted him from making sales calls on them for two years, if he left our company."

This statement is clearly false, as the Agreement placed no such restriction on Mr. Denson, but, as determined in the Ohio Federal Court Action, merely prohibited him from soliciting clients "for the purpose of making sales of skin or blister packaging cards." (*Id.*, ¶ 20).

The May 1st Letter continues with the further statement:

> "Recently, he joined Packaging Graphics, LLC in Pawtucket, Rhode Island. He began calling on our customers, in direct violation of his agreement, and, regrettably, we had to take legal action against him."

This statement, too, is false and defamatory. As is clear from the language of the Agreement (which Rohrer did not share with his customers) the restriction on Mr. Denson's ability to solicit customers only extends to "the purpose of making sales of skin or blister packaging cards." Mr. Denson simply has not, at any time, violated the Agreement. (*Id.*, ¶ 21).

The May 1st Letter further makes the following false and defamatory statement:

> "Until this litigation is completed in the months to follow, the Order approved by the Court prohibits Mr. Denson from selling skin or blister packing cards to our customers."

This statement, too, is plainly false on its face. Neither the Order nor the Agreement bars Mr. Denson from *selling* skin or blister packaging cards to customers, but instead, restricts only certain types of solicitation, as the limitation falsely described in Rohrer's letter would violate public policy by not allowing customers to pick the service providers of their choice. (*Id.*, ¶ 22).

Finally, the May 1st Letter refers to "Mr. Denson's unfortunate decision to violate his agreement with us." This statement is also false and defamatory. (Verified Complaint, ¶ 23).

The above-excerpted statements have severely damaged the business reputations of each of the Plaintiffs by falsely suggesting that each of them has acted unethically and in disregard of their legal obligations. (*Id.*, ¶ 24).

Defendants have also placed Plaintiff in the untenable position of being unable to meaningfully respond to these malicious and false attacks, as to do so would inevitably be argued by Defendants to be a violation of Mr. Denson's Agreement, as it is their unsupported position that Mr. Denson is barred from contacting these customers for any purpose. (*Id.*, ¶ 25).

Defendants made these false and defamatory statements with malice and with full knowledge of their falsity. (*Id.*, ¶ 26). The false and defamatory statements contained within the May 1st Letter have damaged Plaintiffs and will cause Plaintiffs irreparable harm if they are allowed to continue and if they are not retracted. (*Id.*, ¶ 27).

## Argument

A. Standard for Issuance of a Preliminary Injunction

In order to obtain a preliminary injunction, the moving party must establish that (1) it has a reasonable likelihood of success on the merits; (2) it will suffer irreparable harm without the requested injunctive relief, (3) the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) it has shown that the issuance of a preliminary injunction will preserve the status quo. *Westerfelder v. Ferguson*, 998 F. Supp. 146 (D.R.I. 1998); *Iggy's Doughboys, Inc. v. Giroux*, (1999) 729 A.2d 701.

B. Plaintiffs are Likely to Succeed on The Merits of Their Defamation Claim

To succeed on a claim of defamation, a party must establish four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) damages. *Nelson*

*v. City of Cranston*, 116 F. Supp. 2d 260, 267 (D.R.I. 2000); *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 751 (R.I. 2004).

As described above, the May 1st Letter falsely states that the Agreement "restricted [Mr. Denson] from making sales calls on them for two years, if he left our company." This statement is wholly false. There is absolutely no restriction on "making sales calls." Mr. Rohrer chose these words to deliberately mislead his customers into thinking that Mr. Denson would be ignoring his legal obligations by calling on them.

Further, Defendants not only falsely stated that Mr. Rohrer was in violation of his agreement, but falsely states that the "Order approved by the Court prohibits Mr. Denson from selling skin or blister packing cards to our customers." This, too, is an outright falsehood. The restriction is limited to *solicitation*, not *selling*. Of course, Mr. Rohrer was fully aware that a customer is free to purchase product from whomever it wishes.

The net effect of these false statements was to harm Plaintiffs' reputations and business. Accordingly, Plaintiffs have a likelihood of success on their defamation claim.

C. Plaintiffs Are Likely to Succeed on The Merits of Their Tortious Interference with Advantageous Relationship Claim

To succeed on a claim of tortious interference with advantageous relationships, a party must establish five elements: (1) the existence of a business relationship or expectancy with a third party; (2) the defendant's knowledge of that relationship or expectancy; (3) an international act of interference by the defendant; (4) the causing of harm to the plaintiff by virtue of the interference; and (5) resulting damages. *Pride Hyundai, Inc. v. Chrysler Financial Co., LLC*, 263 F. Supp. 2d 374, 398 (D.R.I. 2003); *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island*, 239 F. Supp. 2d 180, 194 (D.R.I. 2003); *L.A. Ray Realty v. Town Council of the Town of Cumberland*, 698 A.2d 202, 207 (R.I. 1997).

The facts of this case are analogous to those in *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, C.A. No. 05-21113-CV-JORDAN (S.D. Fla.). In *Slip-N-Slide*, plaintiff Slip-N-Slide Records, Inc. ("S-N-S"), a record producer and distributor, filed an action alleging, *inter alia*, a claim of tortious interference with advantageous business relationships against Defendant TVT Records, LLC ("TVT"). *See* Report and Recommendation, *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, C.A. No. 05-21113-CV-JORDAN (S.D. Fla. dated Sept. 28, 2005) (Brown, M.J.), at 2 (attached hereto as Exhibit 1).

In *Slip-N-Slide*, TVT disseminated cease and desist letters to numerous distributors which stated that a music album being advertised for release by S-N-S had been created and promoted without TVT's permission and in violation of TVT's rights. *Id.* at 9. The letter also stated that the sale or distribution of the album violated TVT's rights and constituted violation of the Lanham Act. *Id.*

S-N-S had received over 100,000 pre-orders for the album before the letters were received by the distributors. *Id.* at 10. However, S-N-S was unable to release the album when planned because virtually every distributor who received the letters refused to sell it. *Id.* at 10. S-N-S subsequently filed a motion for a preliminary injunction, requesting an order enjoining TVT from interfering with the release of the album. *Id.* at 16.

In recommending that S-N-S's motion for a preliminary injunction be granted, the Magistrate Judge stated that:

> TVT's statement that S-N-S's action in promoting and distributing [the album] were a violation of TVT's rights . . . was a misrepresentation which was made with knowledge (or was at least reckless), and which was clearly intended to cause the recipients of the letter to not purchase [the album].

*Id.* at 18. Thus, the Magistrate Judge determined "that TVT's interference with S-N-S's business relationships with its distributors was intentional and unjustified." *Id.* at 18.

For many of the same reasons outlined above, Plaintiffs are likely to succeed on their claim of tortious interference with advantageous relationships. In brief, Plaintiffs have either a business relationship or expectancy with a number of customers to which the letters were sent. Defendants knew that Plaintiffs had such relationships or expectancies, and intentionally disseminated the May 1st Letter. Dozens of customers have received the May 1st Letter. The false and defamatory statements contained in the May 1st Letter is causing Plaintiffs to lose business and new business opportunities.

D. <u>Plaintiffs Are Suffering Irreparable Harm As a Result of Defendants' Conduct</u>

1. *Plaintiffs are suffering loss of a unique or fleeting business opportunity*

The First Circuit Court of Appeals, for example, has recognized that "the loss of a unique or fleeting business opportunity can constitute irreparable injury." *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 332 (1st Cir. 1997). In *Starlight Sugar*, the defendant, the Department of Agriculture of the Commonwealth of Puerto Rico (the "DOA"), urged the First Circuit to vacate a preliminary injunction that barred the DOA's enforcement of Section Six of its Market Regulation 13. *Starlight Sugar*, 114 F.3d at 331. Section Six prohibited the importation into Puerto Rico of refined sugar intended for consumer sale that was not prepackaged in units of five pounds or less. *Id.* The district court held that Section Six violated the Commerce Clause, the Equal Protection Clause, and that the plaintiff sugar importers had met each of the grounds for preliminary injunctive relief. *Id.*

In affirming the entry of preliminary relief, the First Circuit found that the plaintiffs had established irreparable harm. *Id.* at 331. Specifically, irreparable harm was threatened by the inability of the plaintiff sugar importers to take advantage of an impending shortage of sugar supplies in Puerto Rico. *Id.* The DOA argued that a potential harm cannot be deemed

"irreparable" if it is of a kind that can be later compensated through money damages. *Id.* The First Circuit rejected this argument, holding that:

> While it is true that injunctive relief is generally inappropriate where money damages can make a plaintiff whole, we have recognized that *the loss of a unique or fleeting business opportunity can constitute irreparable injury . . . .* The concern in the present situation is clear: although we remain in the domain of economic profit or loss, a context in which compensation through legal remedies is preferred, *as a practical matter the potential value of an evanescent business opportunity may be extremely difficult to measure, after the fact.*

*Id.* (*emphasis added* and citations omitted); *see also, Hyde Park Partners v. Connolly*, 839 F.2d 837, 853 (1st Cir. 1988) (finding irreparable harm and affirming entry of preliminary relief where timing, such as in the context of a tender offer, is critical).

Here, too, as a result of Defendants' wrongful conduct, Plaintiffs are missing out on opportunities to sell to the prospective customers who received the May 1st Letter. Accordingly, the Defendants have caused and are causing Plaintiffs irreparable harm that cannot be adequately compensated at law.

2. *Plaintiffs are suffering harm to their business reputation and loss of customer goodwill.*

In addition, Defendants' dissemination of the defamatory letter is harming Plaintiffs' business reputation and is causing the loss of customer goodwill. Indeed, "[b]y its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages" and, "[a]ccordingly, this kind of harm is often held to be irreparable." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 20 (1st Cir. 1996); *see also Coastal Distribution, LLC v. Town of Babylon*, C.A. No. 05-CV-2032, 2006 WL 270252, at *3 (E.D.N.Y. Jan. 31, 2006) ("Loss of goodwill and injury to reputation are injuries that are difficult to measure in dollars, and thus, these types of injuries are irreparable harm" and "[f]urthermore, loss of business opportunities and relationships with clients who could produce an indeterminate amount of business over years

to come are also hard to measure in dollars and are properly considered irreparable harm") (citations and quotation marks omitted).

This type of harm is particularly evident where, as here, a competitor disseminates defamatory information to customers. *See, e.g., Xelus, Inc. v. Servigistics, Inc.*, 371 F. Supp. 2d 387, 390 (W.D.N.Y. 2005) (issuing temporary restraining order and finding irreparable harm where competitor's "alleged disparaging comments" could cause "damage to movant's business reputation and loss of customer goodwill").

E. <u>The Balance of The Equities Favors Plaintiffs And Return of The Parties To The Status Quo Prior To The Dissemination of The May 1st Letter</u>

Plaintiffs seek no more than a return to the status quo that existed prior to the dissemination of the May 1st Letter or, in the alternative, that the status quo not be further disrupted by any further and similar defamatory statements. Plaintiffs are thus requesting that Defendants be restrained from disseminating any further defamatory statements and be compelled to retract their misstatements and that they be afforded the opportunity to compete on a level playing field.

Thus, on balance, the hardships presently being suffered by Plaintiffs, including the loss of business opportunity, the continuing harm to its business reputation, and the loss of customer good will, outweighs any alleged hardship to Defendants. *See Silva*, 390 F. Supp. at 695 (holding that balance of hardships weighed in favor of movant where it sought "no more than to preserve the status quo").

**Conclusion**

For these reasons, Plaintiffs respectfully request that the Court enter a Preliminary Injunction enjoining Defendants from making any further defamatory statements, compelling them to issue a written retraction to the customers that received the May 1st Letter and granting such further relief that the Court deems just and appropriate.

PACKAGING GRAPHICS, LLC
and JOHN A. DENSON,

By Their Attorneys,

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: May 26, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of May, 2006, a true copy of the within was hand-delivered to the following:

Daniel K. Kinder, Esq.
Little Medeiros Kinder Bulman & Whitney PC
72 Pine Street
Providence, RI 02903

G:\csb\PackagingGraphics\pldgs\memomopreliminj.doc