UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PACKAGING GRAPHICS, LLC and JOHN A. DENSON, Plaintiffs, | : | |
| v. | : | C.A. No. 06-230ML |
| ROHRER CORPORATION and JOHN P. ROHRER, Defendants. | : | |

**PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION TO ADMIT ATTORNEYS HANS A. NILGES AND THOMAS J. WIENCEK PRO HAC VICE**

Now comes Plaintiffs Packaging Graphics, LLC and John A. Denson ("Plaintiffs") and object to the Motions of Defendants Rohrer Corporation and John P. Rohrer to Admit Attorneys Hans A. Nilges and Thomas J. Wiencek *pro hac vice* in this matter. As grounds for its objection, Plaintiffs rely upon the Memorandum of Law filed simultaneously herewith.

PACKAGING GRAPHICS, LLC
and JOHN A. DENSON,

By Their Attorneys,

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: June 8, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2006, a true copy of the within was hand-delivered to the following:

Daniel K. Kinder, Esq.
George H. Rinaldi, Esq.
Little Medeiros Kinder Bulman & Whitney PC
72 Pine Street
Providence, RI 02903

G:\csb\PackagingGraphics\pldgs\Objection.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PACKAGING GRAPHICS, LLC and JOHN A. DENSON, Plaintiffs, | : | |
| v. | : | C.A. No. 06-230ML |
| ROHRER CORPORATION and JOHN P. ROHRER, Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION TO ADMIT ATTORNEYS HANS A. NILGES AND THOMAS J. WIENCEK *PRO HAC VICE***

Plaintiffs Packaging Graphics, LLC ("Packaging Graphics") and John A. Denson ("Mr. Denson") (collectively, the "Plaintiffs") respectfully submit this Memorandum of Law in support of its Objection to the Motion of Defendants Rohrer Corporation and John P. Rohrer (the "Defendants") to Admit Attorneys Hans A. Nilges and Thomas J. Wiencek *pro hac vice* in the herein matter.

**Preliminary Statement**

Plaintiffs take the unusual step of objecting to the *pro hac vice* Motions of Defendants relating to the admission of Attorneys Nilges and Wiencek (the "Ohio Counsel") in this matter because Plaintiffs' counsel has very recently learned that Mr. Nilges and Mr. Wiencek's law firm Brouse & McDowell (the "Firm") represented Plaintiff John A. Denson in a separate litigation involving virtually identical factual and legal issues, and in which Mr. Denson inevitably would have disclosed privileged matters to the Firm that will be at issue in this lawsuit. Accordingly, as described more fully below, to allow Ohio Counsel to appear in this matter would violate

Rules 1.9 and 1.10 of the Rules of Professional Conduct, and the Motion to Allow them to Appear *pro hac vice* in this action should be denied.

**Background Facts**

A. Mr. Denson's Employment Agreement with Rohrer Corporation

On June 22, 2004, Plaintiff Mr. Denson entered into an Employment Agreement with Defendant Rohrer Corporation (the "Agreement"), whereby Plaintiff Mr. Denson was employed as the Regional Sales Manager for Defendant Rohrer Corporation for the Northeast portion of the United States. (A copy of the Agreement is annexed to the Verified Complaint as Exhibit A.) The Agreement specifically provided, among other things, for the level at which Mr. Denson would be compensated and further provided that the Agreement would be in place for the term of one year. (Verified Complaint, ¶ 10).

The Agreement further provided:

> The Employee recognizes that as a result of his employment by the Company he will obtain confidential information relating to the Company, its business, customers, and plans. Consequently, the Employee covenants and agrees that for a period of *two years* after the termination of his employment whether by termination of this or any successor Agreement, by wrongful discharge, voluntary termination, or otherwise, the Employee shall not, directly or indirectly, within the existing marketing area of the Company, engage, alone or as an officer, employee, partner, agent, joint venture, director, or shareholder, in the solicitation of any entity with whom the Company has done business within the two (2) year period immediately preceding the termination of the Employee's employment, ***for the purpose of making sales of skin or blister packaging cards, to that entity***, regardless of whether such entity has been personally contacted in the past by the Employee.

(Verified Complaint, ¶ 11; *emphasis added*).

During the late Spring of 2005, Mr. Denson left the employ of Rohrer Corporation. (*Id.*, ¶ 12).

In late 2005, Mr. Denson began work for Packaging Graphics as a sales representative. In connection with his attempts to sell products of Packaging Graphics, Mr. Denson was well aware of his obligations under the Agreement and, at no time, has he violated them by soliciting any Rohrer Corporation customers for the purpose of making sales of skin or blister packaging cards. (*Id.*, ¶ 14).

The "skin or blister packaging cards" referred to in the Agreement described a specific kind of packaging that is manufactured and sold by each of Rohrer Corporation and Packaging Graphics. However, skin or blister packaging cards represents only a portion of Packaging Graphics' business, as it also sells a wide variety of other packaging and printing products. (*Id.*, ¶ 13).

B. The Ohio Litigations

On March 31, 2006, Defendant Rohrer Corporation initiated an action in the Ohio Court of Common Pleas, Medina County, Ohio, asserting that Plaintiff Mr. Denson has violated the Agreement by soliciting Rohrer Corporation's customers (the "Ohio Action"). Packaging Graphics removed the Ohio Action to Federal Court based on diversity of citizenship and filed a Motion to Dismiss for Lack of Personal Jurisdiction, asserting that the Court lacked personal jurisdiction over Mr. Denson (who lives in Connecticut and sells exclusively in the northeast) or Packaging Graphics (which is located in Rhode Island and does virtually no business in Ohio) (the "Ohio Federal Court Action"). (*Id.*, ¶ 15).

In each of the Ohio actions, Rohrer Corporation moved for a temporary restraining order and preliminary injunction, taking the position that the Agreement should be interpreted to prohibit Mr. Denson from soliciting any of Rohrer Corporation's clients for any purpose whatsoever, and that such relief should not be limited to "sales of skin or blister packaging cards," as specifically set out in the Agreement. (*Id.*, ¶ 16).

The Ohio Federal Court rejected this argument, ultimately entering a Consent Temporary Restraining Order that simply mirrored the specific limitations relating to solicitations contained within the Agreement containing the language, "for the purpose of making sales of skin or blister packaging cards." (*Id.*, ¶ 17).

The Ohio Federal Court has further informed the parties that it will not hear Rohrer Corporation's Motion for a Preliminary Injunction until the Motion to Dismiss for lack of personal jurisdiction of Packaging Graphics and Mr. Denson is briefed and decided by the Court. Packaging Graphics' Reply Brief is due this week. Again, Mr. Denson and Packaging Graphics base their Motion to Dismiss in the Ohio Federal Court Action on their contention that neither of them have sufficient minimum contacts with Ohio for the Court to have personal jurisdiction over them. (*Id.*, ¶ 18).

C. The False and Defamatory May 1, 2006 Letter

Upon information and belief, on May 1, 2006, Mr. Rohrer caused a letter to be sent out on behalf of the Rohrer Corporation to approximately sixty-six of its customers and former customers (the "May 1st Letter"). (A copy of sample of the May 1st Letter is annexed to the Verified Complaint as Exhibit B). (*Id.*, ¶ 19).

The "re" line of the May 1st Letter read "John Denson." The May 1st Letter made a number of statements that were false and defamatory, among them the following:

> "our salesmen, like John Denson (the gentleman who formerly handled your account with Rohrer), had an employment agreement with us that acknowledged our customers' importance, and restricted him from making sales calls on them for two years, if he left our company."

This statement is clearly false, as the Agreement placed no such restriction on Mr. Denson, but, as determined in the Ohio Federal Court Action, merely prohibited him from soliciting clients "for the purpose of making sales of skin or blister packaging cards." (*Id.*, ¶ 20).

The May 1st Letter continues with the further statement:

> "Recently, he joined Packaging Graphics, LLC in Pawtucket, Rhode Island. He began calling on our customers, in direct violation of his agreement, and, regrettably, we had to take legal action against him."

This statement, too, is false and defamatory. As is clear from the language of the Agreement (which Rohrer did not share with his customers) the restriction on Mr. Denson's ability to solicit customers only extends to "the purpose of making sales of skin or blister packaging cards." Mr. Denson simply has not, at any time, violated the Agreement. (*Id.*, ¶ 21).

The May 1st Letter further makes the following false and defamatory statement:

> "Until this litigation is completed in the months to follow, the Order approved by the Court prohibits Mr. Denson from selling skin or blister packing cards to our customers."

This statement, too, is plainly false on its face. Neither the Order nor the Agreement bars Mr. Denson from *selling* skin or blister packaging cards to customers, but instead, restricts only certain types of solicitation, as the limitation falsely described in Rohrer's letter would violate public policy by not allowing customers to pick the service providers of their choice. (*Id.*, ¶ 22).

Finally, the May 1st Letter refers to "Mr. Denson's unfortunate decision to violate his agreement with us." This statement is also false and defamatory. (Verified Complaint, ¶ 23).

Plaintiffs therefore brought the herein action, claiming that the above-excerpted statements have severely damaged the business reputations of each of the Plaintiffs by falsely suggesting that each of them has acted unethically and in disregard of their legal obligations. (*Id.*, ¶ 24). Crucial to this claim will be the issues of whether Mr. Denson used trade secrets of Rohrer's, as it claims in the Ohio Actions, or whether he had already gained this knowledge during other employment prior to working for Rohrer.

By Order of Magistrate-Judge Almond dated May 24, 2006, Plaintiffs were granted expedited discovery relating to their request for a preliminary injunction and Defendants' Responses to Requests for Production of Documents and Answers to Interrogatories are due on June 9, 2006.

D. The Georgia Litigation

Counsel for Plaintiffs has recently learned that in 1985, a company called Colonial Packaging Co. sued Rohrer Corporation and Mr. Denson in the Gwinnett County Superior Court in Georgia in an action entitled "Colonial Packaging Company v. John A. Denson and Rohrer Corporation, C.A. No. 85-A-4221-2 (the "Georgia Action"). In its Complaint, the Plaintiff Colonial Packaging asserted that Mr. Denson had worked as a salesman for it from 1972 until 1985, when he resigned. The Complaint alleged that his employment with Colonial, he "became intimately familiar with all aspects of Colonial's sales process." The Complaint further alleged that "Denson engaged in clandestine discussions with Rohrer regarding employment as a sales representative." Upon his departure, it was claimed that he took with him to Rohrer "documents and property reflecting or containing the trade secrets and confidential information of Colonial."

The Complaint goes on to allege that Mr. Denson went on to improperly "call on" Colonial's customers, using trade secrets and confidential information taken from Colonial.

The Ohio law firm of Brouse & McDowell - - the very same law firm that has appeared on Defendants' behalf in the herein action and the Ohio Actions - - entered its appearance and defended Mr. Denson in the Georgia Action. Indeed, Mr. Denson was represented in the Georgia action by Jeffrey T. Heintz, Esq., who remains with the Firm and practices out of the same office and practice area as Messrs. Nilges and Wiencek at the Firm.

The Complaint against Mr. Denson in the Ohio Action is a virtual mirror image of the claims that they defended on his behalf in Georgia. The Ohio Complaint states: "[d]uring his employments, Denson was provided access to Rohrer's confidential information including, but not limited to, confidential information relating to certain of Rohrer's customers." It goes on to state: "Denson has materially breached his Employment Agreement by unfairly competing with Rohrer, including soliciting Rohrer's customers and, upon information and belief, by using and disclosing Rohrer's confidential trade secrets information (Ohio Complaint at ¶ 6 and 15).

**Argument**

Rule 1.9 of the Rules of Professional Conduct provides that:

> A lawyer who has formerly represented a client in a matter shall not thereafter (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client.

RI Sup. Ct. Art. V, Rule 1.9. Pursuant to the well-established rules of ethics, conflicts governed by Rule 1.9 applying to one attorney are imputed to that attorney's law firm. RI Sup. Ct. Art. V, Rule 1.10.

The Rhode Island Supreme Court has held that the question of whether two matters are "substantially related" so that disqualification would be required hinges on whether the relationship between the issues in the prior and present cases is patently clear or if the issues are identical or essentially the same. *Brito v. Capone*, 819 A.2d 663, 665 (R.I. 2003).

Here, because the truth or falsity of Mr. Rohrer's statements in the May 1st Letter hinge on the non-compete and trade secret issues presently pending in the Ohio Actions, it is apparent that the central issues are substantially related in the instant matter and in the Georgia Action. The claims that the Firm defended Mr. Denson against in the Georgia Action are largely identical to those asserted by Ohio Counsel against him in the Ohio Actions, namely, alleged breach of duty of loyalty and misappropriation of trade secrets. In the course of representing Mr. Denson, Ohio Counsel's firm inevitably would have had to engage in wholly protected discussions as to the knowledge of the industry that he may have brought with him to his employment at Rohrer and to his employment with Colonial because if he was aware of industry matters before he came to Rohrer, they would not be "trade secrets" belonging to Rohrer. There is no way of knowing what other privileged and confidential information that the Firm may have in its possession.

Under well-established law, the key inquiry will not be whether actual confidences were disclosed, but whether a "possibility" that such confidences were disclosed existed. As surmised by the Court of Appeals for the Seventh Circuit,

> the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought. The rule thus does not necessarily involve any inquiry into the imponderables involved in the degree of relationship between the two matters but instead involves a realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other.... It is not appropriate for the court to inquire into whether actual confidences were disclosed.

*Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 224 (7th Cir. 1978). *See also, e.g.*, *Emle Insua. c. Patentex, Inc.*, 478 F.2d 562, 564 (2nd Cir. 1973) (disqualification based on whether confidential client information could potentially be used in subsequent case); *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*, 280 Cal. Rptr. 614, 617 (Cal App. 1991) ("substantial relationship" test focuses on risk of improper use in latter, adverse representation of confidential information gained in former representation); *In Re Conduct of Brandness*, 702 P.2d 1098, 1104 (Or. 1985) (test for substantial relationship is whether "representation of the former client provided the lawyer with confidential information the use of which would, or would likely, inflict injury or damage upon the former client in the subsequent matter").

*Kaselaan & D'Angelo Associates v. D'Angelo*, 144 F.R.D. 235 (D. N.J. 1992), is instructive and involves facts strikingly similar to the case at bar. The *Kaselaan* case involved a claim by Plaintiff corporation against its former employee for breach of a restrictive covenant, misappropriation of trade secrets and alleged breaches of his duty of loyalty to his former employer. The defendant retained counsel who had previously represented one of the Plaintiffs in other litigation matters involving claims of misappropriation of trade secrets, breach of duty of loyalty and unfair competition. Defendant argued that the cases were not "substantially related" because they involved different facts and claimed that a "substantial relationship" exists only when the factual basis underlying the former representative applied to the subsequent representation. The court summarized Defendant's argument thusly: "In short, defendant asserts that plaintiffs have failed to show that the facts obtained from the prior representation would apply to the current representation." (*Id.*, at 239).

The court rejected Defendant's argument and disqualified Defendant's counsel, emphasizing the three-fold purposes of Rule 1.9: protecting confidences, maintaining integrity and preserving loyalty. (*Id.* at 239). The court further quoted the Third Circuit, in stating that Rule 1.9:

> is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys. Second, the rule is important for the maintenance of public confidence in the integrity of the bar. Finally, and importantly, a client has a right to expect the loyalty of his attorney in the matter for which he is retained.

*In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3rd Cir. 1984). Based on these factors, the court ruled that, despite the different operative facts in the cases, the similarity of legal issues and adversity between client and former client created a "climate for disclosure", creating such a "substantial relationship" that counsel should be disqualified.

The same logic applies here. Mr. Nilges and Mr. Wiencek's Firm dealt with identical issues in the Georgia Action which would have inevitably required the disclosure of confidential information that potentially could be used in this action. Such a "climate of disclosure" requires that Defendant's Motion for *pro hac vice* admission be denied, even in the absence of any specific showing that such confidential or privileged information was actually being used by counsel.

**Conclusion**

For all of these reasons, Plaintiff respectfully request that this Court enter an Order denying Plaintiff's Motion for the *pro hac vice* admission of Hans A. Nilges and Thomas J. Wiencek and granting such further relief as the Court deems just and appropriate.

PACKAGING GRAPHICS, LLC
and JOHN A. DENSON,

By Their Attorneys,

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: June 8, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of June, 2006, a true copy of the within was hand-delivered to the following:

Daniel K. Kinder, Esq.
George H. Rinaldi, Esq.
Little Medeiros Kinder Bulman & Whitney PC
72 Pine Street
Providence, RI 02903

G:\csb\PackagingGraphics\pldgs\Memorandum of Law.doc