UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PACKAGING GRAPHICS, LLC and JOHN A. DENSON, Plaintiffs, | : | |
| v. | : | C.A. No. 06-230ML |
| ROHRER CORPORATION and JOHN P. ROHRER, Defendants. | : | |

**PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6)**

Now comes Plaintiffs Packaging Graphics, LLC and John A. Denson ("Plaintiffs") and object to the Motion of Defendants Rohrer Corporation and John P. Rohrer to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As grounds for their objection, Plaintiffs rely upon the Memorandum of Law filed simultaneously herewith.

PACKAGING GRAPHICS, LLC
and JOHN A. DENSON,

By Their Attorneys,

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: June 8, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of June, 2006, a true copy of the within was hand-delivered to the following:

Daniel K. Kinder, Esq.
George H. Rinaldi, Esq.
Little Medeiros Kinder Bulman & Whitney PC
72 Pine Street
Providence, RI 02903

G:\csb\PackagingGraphics\pldgs\Objectiontomotiontodismiss.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PACKAGING GRAPHICS, LLC and JOHN A. DENSON, Plaintiffs, | : | |
| v. | : | C.A. No. 06-230ML |
| ROHRER CORPORATION and JOHN P. ROHRER, Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Plaintiffs Packaging Graphics, LLC ("Packaging Graphics") and John A. Denson ("Mr. Denson") (collectively, the "Plaintiffs") respectfully submit this Memorandum of Law in support of their Objection to the Motion of Defendants Rohrer Corporation and John P. Rohrer (the "Defendants") to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss").

**Preliminary Statement**

In sum, Defendants seek dismissal of the herein action prior to discovery, based on their claim that they were "privileged" to make the false, defamatory and malicious statements about Plaintiffs contained in the May 1st Letter because they are a competitor of Plaintiffs and because they were merely stating their "opinion" as to the meaning of Mr. Denson's employment agreement and a consent order entered in another case. As described more fully below, however, this argument fails as a matter of law because such qualified privileges to defamation and tortious interference claims only apply when a Defendant has not acted "improperly," or with "ill will" or with "malice." Because Plaintiffs have alleged the sort of malicious and improper

conduct that, under the well-established case law, overrides any such claim of privilege, Defendants' Motion should be denied.

**The Allegations of the Complaint**

The Verified Complaint, which was filed in Superior Court and removed by Defendants to this Court pursuant to 28 U.S.C. § 1441, alleges that Plaintiff Packaging Graphics is a manufacturer and seller of packaging materials located in Pawtucket, Rhode Island and Mr. Denson is one of its salesmen. (Verified Complaint ¶ 1). As described in greater detail below, the Verified Complaint alleges that Defendants Rohrer Corporation and John P. Rohrer sent out a letter to many dozens of Plaintiffs' potential customers making numerous false, defamatory and malicious statements that Defendants were not, by law, allowed to sell to these customers and would be breaking the law by doing so. (Verified Complaint ¶ 2, 19-26). In order to put the letter in context, the Verified Complaint sets out the background of the dispute, including describing other litigation pending between the parties, in some detail.

A. Mr. Denson's Employment Agreement With Rohrer Corporation

The Verified Complaint alleges that, on June 22, 2004, Plaintiff Mr. Denson entered into an Employment Agreement with Defendant Rohrer Corporation (the "Agreement"), whereby Plaintiff Mr. Denson was employed as the Regional Sales Manager for Defendant Rohrer Corporation for the Northeast portion of the United States. (A copy of the Agreement is annexed to the Verified Complaint as Exhibit A). The Agreement specifically provided, among other things, for the level at which Mr. Denson would be compensated and further provided that the Agreement would be in place for the term of one year. (Verified Complaint, ¶ 10).

The Agreement further provided:

> The Employee recognizes that as a result of his employment by the Company he will obtain confidential information relating to the Company, its business, customers, and plans. Consequently, the Employee covenants and agrees that for a period of *two years* after the termination of his employment whether by termination of this or any successor Agreement, by wrongful discharge, voluntary termination, or otherwise, the Employee shall not, directly or indirectly, within the existing marketing area of the Company, engage, alone or as an officer, employee, partner, agent, joint venture, director, or shareholder, in the solicitation of any entity with whom the Company has done business within the two (2) year period immediately preceding the termination of the Employee's employment, ***for the purpose of making sales of skin or blister packaging cards, to that entity***, regardless of whether such entity has been personally contacted in the past by the Employee.

(Verified Complaint, ¶ 11; *emphasis added*).

The Verified Complaint further alleges that during the late Spring of 2005, Mr. Denson left the employ of Rohrer Corporation. (*Id.*, ¶ 12). In late 2005, Mr. Denson began work for Packaging Graphics as a sales representative. In connection with his attempts to sell products of Packaging Graphics, Mr. Denson has been entirely aware of his obligations under the Agreement and, at no time, has he violated them by soliciting any Rohrer Corporation customers for the purpose of making sales of skin or blister packaging cards. (*Id.*, ¶ 14).

The Verified Complaint specifically describes that the "skin or blister packaging cards" referred to in the Agreement described a specific kind of packaging that is manufactured and sold by each of Rohrer Corporation and Packaging Graphics. However, skin or blister packaging cards represents only a portion of Packaging Graphics' business, as it also sells a wide variety of other packaging and printing products. (*Id.*, ¶ 13).

B. The Ohio Litigations

The Verified Complaint goes on to allege that on March 31, 2006, Defendant Rohrer Corporation initiated an action in the Ohio Court of Common Pleas, Medina County, Ohio, asserting that Plaintiff Mr. Denson had violated the Agreement by soliciting Rohrer Corporation's customers (the "Ohio Action"). Shortly thereafter, Packaging Graphics removed the Ohio Action to Federal Court based on diversity of citizenship and filed a Motion to Dismiss for Lack of Personal Jurisdiction, asserting that the Court lacked personal jurisdiction over Mr. Denson (who lives in Connecticut and sells exclusively in the northeast) or Packaging Graphics (which is located in Rhode Island and does virtually no business in Ohio) (the "Ohio Federal Court Action"). (*Id.*, ¶ 15).

The Verified Complaint describes that in each of the Ohio actions, Rohrer Corporation moved for a temporary restraining order and preliminary injunction, taking the position that the Agreement should be interpreted to prohibit Mr. Denson from soliciting *any* of Rohrer Corporation's clients for *any purpose whatsoever*, and that such relief should not be limited to "sales of skin or blister packaging cards," as specifically set out in the Agreement. (*Id.*, ¶ 16).

The Ohio Federal Court rejected this argument, ultimately entering a Consent Temporary Restraining Order that simply mirrored the specific limitations relating to solicitations contained within the Agreement containing the language, "for the purpose of making sales of skin or blister packaging cards." (*Id.*, ¶ 17).

The Verified Complaint further alleges that the Ohio Federal Court has informed the parties that it will not hear Rohrer Corporation's Motion for a Preliminary Injunction until the Motion to Dismiss for lack of personal jurisdiction of Packaging Graphics and Mr. Denson is briefed and decided by the Court. Again, Mr. Denson and Packaging Graphics base their Motion

to Dismiss in the Ohio Federal Court Action on their contention that neither of them have sufficient minimum contacts with Ohio for the Court to possess personal jurisdiction over them. (*Id.*, ¶ 18).

C. The False and Defamatory May 1, 2006 Letter

Upon information and belief, on May 1, 2006, Mr. Rohrer caused a letter to be sent out on behalf of the Rohrer Corporation to approximately sixty-six of its customers and former customers (the "May 1st Letter"). (A copy of sample of the May 1st Letter is annexed to the Verified Complaint as Exhibit B). (*Id.*, ¶ 19).

The "re" line of the May 1st Letter read "John Denson." The May 1st Letter made a number of statements that were false and defamatory, among them the following:

> "our salesmen, like John Denson (the gentleman who formerly handled your account with Rohrer), had an employment agreement with us that acknowledged our customers' importance, and restricted him from making sales calls on them for two years, if he left our company."

This statement is clearly false, as the Agreement placed no such restriction on Mr. Denson, but, as determined in the Ohio Federal Court Action, merely prohibited him from soliciting clients "for the purpose of making sales of skin or blister packaging cards." (*Id.*, ¶ 20).

The May 1st Letter continued with the further statement:

> "Recently, he joined Packaging Graphics, LLC in Pawtucket, Rhode Island. He began calling on our customers, in direct violation of his agreement, and, regrettably, we had to take legal action against him."

This statement, too, is false and defamatory. As is clear from the language of the Agreement (which Rohrer did not share with his customers) the restriction on Mr. Denson's ability to solicit customers only extended to "the purpose of making sales of skin or blister packaging cards." Mr. Denson simply has not, at any time, violated the Agreement. (*Id.*, ¶ 21).

The May 1st Letter further makes the following false and defamatory statement:

> "Until this litigation is completed in the months to follow, the Order approved by the Court prohibits Mr. Denson from selling skin or blister packing cards to our customers."

This statement, too, is plainly false on its face. Neither the Order nor the Agreement bars Mr. Denson from *selling* skin or blister packaging cards to customers, but instead, restricts only certain types of solicitation, as the limitation falsely described in Rohrer's letter would violate public policy by not allowing customers to pick the service providers of their choice. (*Id.*, ¶ 22).

Finally, the May 1st Letter referred to "Mr. Denson's unfortunate decision to violate his agreement with us." This statement is also false and defamatory. (Verified Complaint, ¶ 23).

The Verified Complaint alleges that the above-excerpted statements have severely damaged the business reputations of each of the Plaintiffs by falsely suggesting that each of them has acted unethically and in disregard of their legal obligations. (*Id.*, ¶ 24).

The Verified Complaint further alleges that Defendants have also placed Plaintiff in the untenable position of being unable to meaningfully respond to these malicious and false attacks, as to do so would inevitably be argued by Defendants to be a violation of Mr. Denson's Agreement, as it is their unsupported position that Mr. Denson is barred from contacting these customers for any purpose. (*Id.*, ¶ 25).

The Verified Complaint alleges that Defendants made these false and defamatory statements with malice and with full knowledge of their falsity. (*Id.*, ¶ 26). The false and defamatory statements contained within the May 1st Letter have damaged Plaintiffs and will cause Plaintiffs irreparable harm if they are allowed to continue and if they are not retracted. (*Id.*, ¶ 27).

## **Argument**

I. The Applicable Standard

A trial court may dismiss a complaint under Rule 12(b)(6) only if no relief can be granted based on any set of facts that could be proved consistent with plaintiff's allegations. *Magnum Defense, Inc. v. Harbour Group, Ltd.*, 248 F. Supp. 2d 64,66 (D.R.I. 2003). In considering such a motion, the Court must treat all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff. *Cogne v. City of Somerville*, 972 F.2d 440, 442-43 (1st Circuit 1992); *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 997 (1st Circuit 1992). Because, as described below, Plaintiffs have properly alleged facts supporting their claims, and Defendants' Motion should be denied.

II. Plaintiffs have Alleged Sufficient Facts to Support a Claim of Libel

Under Rhode Island Law, there are four elements to a defamation claim: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) damages.

A. The Verified Complaint Asserts a False and Defamatory Statement Concerning Plaintiffs

As set out above, among other things, the May 1st Letter falsely states:

- Mr. Denson's employment agreement "restricted him from making sales calls on them for two years." This statement is false, as no such restriction is contained in the agreement; the employment agreement merely prohibited solicitations for the purpose of making sales of "skin or blister packaging cards."

- "[Mr. Denson] began calling on our customers, in direct violation of his agreement…" This statement is untrue as well, because it was not a violation of his agreement to call on customers.

- "the Order approved by the Court prohibits Mr. Denson from selling skin or blister cards to our customers." This, too, is entirely false, as the Order contains no such restriction and the agreement bans only solicitations, *not* sales.

These statements refer not only to Mr. Denson, but to Packaging Graphics, as it is undisputed that Packaging Graphics is the actual seller of the products in question and Mr. Denson is only acting as its agent. That Packaging Graphics has also been defamed and interfered with is apparent from the face of the May 1st Letter, which states:

> Recently, he joined Packaging Graphics, LLC in Pawtucket, Rhode Island. He began calling on our customers, in direct violation of his agreement, and, regrettably, we had to take legal action against him.

The Restatement of Torts (Second) makes clear that a corporation is defamed when the defamatory statement "tends to prejudice it in the conduct of its business or to deter others from dealing with it." Restatement Torts (Second) § 561 (a). It is well-established that "[a] corporation may be defamed by words directed at its employees if they are such as to discredit the method by which its business is conducted." *Neiman-Marcus Co. v. Lait*, 107 F. Supp. 96 (S.D. N.Y. 1952); *see also Minerva Marine, Inc. v. Spiliotes*, 2005 U.S. Dist. LEXIS 41854, *15 (D. N.J. 2005) (reversed on other grounds) (a corporation may be defamed by words directed at employees bearing on the way that business is conducted); *Dombey v. Pheonix Newspapers, Inc.*, 708 P.2d 742 (Ariz. 1985) (corporation may sue for defamatory statements directed at employees where statements also discredit the way the corporation does business); *Ocudyne, Inc. v. KMI, Inc.*, 1994 U.S. Dist. LEXIS 3653, *2 (E.D. Pa. 1994) (defamation of individuals may also defame their employer corporation).

Here, it would be entirely premature to determine from the face of the pleadings whether Packaging Graphics has been harmed by Defendants' statements. The allegations of the Complaint, which must be accepted as true for the purposes of this Motion, are that such harm has taken place. Defendants' argument that no false statements were made against Packing Graphics therefore simply misses the mark.

B. <u>The Complaint Further Alleges an Unprivileged Communication to a Third Party</u>

Defendants apparently concede that the May 1st Letter was published to dozens of Plaintiffs' potential customers, but instead contends that it was privileged as "opinion" or because it was made by a competitor and therefore this Court can rule at the very outset of this case and from the face of the pleadings that Plaintiffs cannot ultimately prevail on their claims. This contention is unsupported by case law, however.

Defendants reliance on *Cullen v. Anclan*, 809 A.2d 1107 (R.I. 2002) is misplaced. Unlike the facts of our case, *Cullen* did not involve a malicious letter defaming a business competitor, but instead involved a letter in which the author of the letter expressed his opinion as to the conduct of a politician at a public hearing. The statements at issue in the *Cullen* case, which consisted of clear statements of opinion that Plaintiff had "behaved irrationally," had shown no "sense of decorum" and was acting "out of control" stand in stark contrast to Defendants' statements, which are simply offered as objective fact, with nothing provided in the context of the letter to indicate in any manner that they are "opinion."

Indeed, instead of the factually inapposite *Cullen* case, this Court's analysis should be guided by the Rhode Island Supreme Court's well-reasoned decision in *Gordon v. St. Joseph's Hospital*, 496 A.2d 132 (R.I. 1985). In the *Gordon* case, two doctors had a three year contract to provide emergency services at the defendant hospital. The contract contained a provision which

allowed either side to terminate the contract on 120 days written notice. When the parties were unable to negotiate a successor contract, the doctors sent a written notice of the termination to the hospital administrator, in accordance with the contract's termination provisions. Not long after, the administrator sent a letter to all members of the hospital medical staff claiming that the emergency physicians were "no longer willing to honor" their contract in its present form. *Id.*. at 134.

The doctors sued the hospital for libel, asserting that the letter contained a defamatory statement that falsely accused them of breaching the contact. The Rhode Island Supreme Court found that even though a qualified privilege attached to the defendants' communication, the plaintiffs were entitled to present to the fact-finder evidence of the malice, ill-will or bad faith of Defendant in making the statement contained in the letter. *Id.* at 137. *See also, e.g., Swanson v. Speidel Corp.*, 110 R.I. 335, 341 (R.I. 1972) (malicious intent will overcome conditional privilege that may apply in libel cases); *Ponticelli v. Mine Safety Appliance Co.*, 104 R.I. 549, 556 (R.I. 1968) (a conditional privilege will not be sustained if the defamatory statements were made with malice); *Tillinghast v. McLeon*, 17 R.I. 208, 209 (R.I. 1891) (holding that libelous statements otherwise conditionally privileged cannot be sustained if the defamatory statements have been made with malice).

This Court should follow the sound reasoning set out in these cases. It has been alleged that Defendants' statements were made for the purpose of harming Plaintiffs' business. The "malice" and bad faith of Defendants in publishing the false statements (which directly contradicted the actual terms of the Order and Employment Agreement) should not be resolved by way of a Motion to Dismiss, but instead should be resolved based on a fact-intensive analysis of the relevant factors. The Motion to Dismiss Plaintiffs' libel claim should be denied.

C. <u>The Plaintiffs Have Alleged Fault Amounting to At Least Negligence</u>

The Complaint clearly alleges that the false statements were intentionally and maliciously made. Accordingly, Plaintiffs have also satisfied the third prong of the libel standard under Rhode Island law.

D. <u>Plaintiffs Have also Asserted Damages Resulting from Defendants' Wrongful Conduct</u>

The Complaint is complete with specific allegations that Plaintiffs have been damaged, and Defendants apparently do not suggest that this prong has not also been satisfied.

II. <u>Plaintiffs Have Also Stated A Claim for Tortious Interference, as "Improper" and "Malicious" Statements are Unprotected by any Applicable Privileges</u>

Defendants apparently concede that Plaintiffs have asserted the elements of tortious interference with advantageous relations claim, but contend instead that they were privileged to make the false statements in their letter because they were acting in their financial interests by "proper means." However, it is well-established that such a qualified or conditional privilege, sometimes referred to as the "financial interest" or "competitor's" privilege, will only apply where the defendant's conduct is not motivated by spite, malice, or some other improper objective. *Temps & Co., Inc. v. Finovia Capital, Inc.*, 2001 WL 503249 (D.D.C. 2001). In other words, a qualified privilege, based on one's financial interest, will only apply where the statement in question has been made in "good faith" and can be overcome by a showing of "actual malice" on the part of the alleged wrongdoer. *Western Mass. Blasting Corp. v. Metropolitan and Cas.*, 783 A.2d 398, 402 (R.I. 2001) (stating general rule that "privilege is only conditional because the plaintiff still may overcome the privilege by showing actual malice on the part of the alleged wrongdoer"); *Belliveau Building Corp. v. O'Coin*, 763 A.2d 622, 629 (R.I.

2000) (same). For purposes of a Motion to Dismiss, the allegation that the statements were made with malice must, of course, be taken as true.

Here, Plaintiffs allege in the Verified Complaint that Defendants deliberately and maliciously made the statements, "with the malicious intent of causing damage to Plaintiffs' respective reputations and to damage their business." (Verified Complaint, ¶ 2) and "with malice and full knowledge of their falsity." (*Id.*, ¶ 26). This is the very essence of "malice," which under Rhode Island law, would not require a Plaintiff to prove "actual malice" or ill will, but only "legal" malice, which consists of an "intent to do harm without justification." *Toste Farm v. Hadbury, Inc.*, 798 A.2d 901, 907 (R.I. 2002); *Jolicoeur Furniture Co. v. Baldelli*, 653 A.2d 740, 753 (R.I. 1995). Accordingly, the qualified "financial interest" privilege to claims of tortious interference has no application.

This conclusions is bolstered by the Restatement of Torts (Second), which summarizes the competitor's privilege thusly:

> (1) One is privileged purposely to cause a third person not to enter into or continue a business relative with competitor of the actor if
> (a) the relative concerns a matter involved in the competition between the actor and his competitor, and
> *(b) the actor does not employ improper means, and*
> (c) the actor does not intend thereby to create or continue an illegal restraint of competition, and
> (d) the actor's purpose is at least in part to advance his interest in his competition with the other.

Restatement of Torts (2d) § 768 (*emphasis added*).

Here, it is entirely clear that the Verified Complaint alleges that Defendants used "improper means" to dissuade potential customers from buying from Plaintiffs, namely, by intentionally lying about the effect of the Ohio Court's Order, Mr. Denson's Employment Contract, and falsely stating that it would be unlawful for Plaintiffs to sell to them. While we

would respectfully submit that this alleged conduct is clearly "improper," at the very least, whether or not it is "improper" is an intensive fact question that should not be resolved by way of a Motion to Dismiss.

## Conclusion

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order denying Defendants Motion to Dismiss and grant such further relief as the Court deems just and appropriate.

PACKAGING GRAPHICS, LLC
and JOHN A. DENSON,

By Their Attorneys,

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: June 8, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of June, 2006, a true copy of the within was hand-delivered to the following:

Daniel K. Kinder, Esq.
George H. Rinaldi, Esq.
Little Medeiros Kinder Bulman & Whitney PC
72 Pine Street
Providence, RI 02903

G:\csb\PackagingGraphics\pldgs\Memorandum of Law re Motion to Dismiss.doc