**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PACKAGING GRAPHICS LLC, and** | ) | |
| **JOHN A. DENSON** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 06-230-ML** |
| | ) | |
| **ROHRER CORPORATION, AND** | ) | |
| **JOHN P. ROHRER** | ) | |
| **Defendants** | | |

**DEFENDANTS ROHRER CORPORATION AND JOHN P. ROHRER'S OBJECTION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Now come Defendants Rohrer Corporation and John P. Rohrer ("Defendants") and object to the Motion of Packaging Graphics and John A. Denson for a Preliminary Injunction. The basis for this Objection is set forth more fully in the memorandum of law in support of this objection, which is being filed contemporaneously herewith and is incorporated by reference.

WHEREFORE, the Defendants Rohrer Corporation and John P. Rohrer, respectfully request that this Honorable Court deny the plaintiff's motion for a preliminary injunction.

Respectfully submitted,

Defendants, Rohrer Corp. and John Rohrer
By their attorneys

Daniel K. Kinder (2151)
dkinder@lmkbw.com
George H. Rinaldi (5599)
grinaldi@lmkbw.com
**LITTLE MEDEIROS KINDER BULMAN & WHITNEY PC**
72 Pine Street
Providence, R.I. 02903
Telephone: (401) 272-8080
Fax: (401) 272-8195

Thomas J. Wiencek
(Motion for admission pro-hac vice pending)
twiencek@brouse.com
Hans A. Nilges
(Motion for admission pro-hac vice pending)
hnilges@brouse.com
**BROUSE McDOWELL**
388 South Main Street, Suite 500
Akron, Ohio 44311-4407
Ph: (330) 535-5711
Fax: (330) 253-8601

Date: June ___, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PACKAGING GRAPHICS LLC, *et al.*** | ) | **CASE NO: 06-230-ML** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ROHRER CORPORATION, *et al.*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' ROHRER CORPORATION AND JOHN P. ROHRER OBJECTION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendants Rohrer Corporation and John Rohrer respectfully submit this memorandum of law in support of their objection to Plaintiffs' Motion for a Preliminary Injunction.

## I. INTRODUCTION.

Plaintiffs request this Court to do what the United States Supreme Court and the vast majority of this nation's lower courts have never permitted: issue a "gag order" on Plaintiffs' *allegedly* defamatory speech and therefore engage in an illegal prior restraint of Defendants' First Amendment rights. That extraordinary relief, however, is apparently not enough for the Plaintiffs. Indeed, even though there is not even arguably any "great urgency" here, and Plaintiffs' right to relief is so far from being "very clear" that Defendants have filed a Rule 12(b)(6) motion to dismiss their claims, Plaintiffs have the temerity to request this court to compel the Defendants to take up the pen and write a letter of retraction to their own customers. This is also relief that has been expressly rejected by the vast majority, if not all, of the courts in the United States.

## II. STATEMENT OF FACTS.

Defendant Rohrer Corporation is an Ohio corporation engaged in the business of selling packaging products. (Complaint, ¶ 5, 13). Rohrer's Chief Executive Officer and Chairman of the Board is Defendant John Rohrer, an Ohio resident. (*Id.* at ¶¶ 5, 6).

Plaintiff Packaging Graphics, LLC is one of Rohrer's competitors, and is a Rhode Island limited liability corporation. (*Id.* at ¶3). Recently, Packaging Graphics hired an ex-Rohrer employee, Plaintiff John Denson, a resident of Connecticut. (*Id.* at ¶ 4).

While working with Rohrer as a sales representative, Denson entered into an Employment Agreement, which contained a restrictive covenant. (*Id.* at ¶ 10). A copy of that Employment Agreement is attached to Plaintiffs' Complaint as Exhibit A. Pursuant to that restrictive covenant, Denson agreed for a period of two years after terminating his employment with Rohrer, that he would not engage in certain competitive activities:

> [T]he Employee covenants and agrees that for a period of two years after the termination of his employment whether by termination of this or any successor Agreement, by wrongful discharge, voluntary termination, or otherwise, the Employee shall not, directly or indirectly, within the existing marketing area of the Company, engage, alone or as an officer, employee, partner, agent, joint venture, director, or shareholder, in the solicitation of any entity with whom [Rohrer] has done business within the two (2) year period immediately preceding the termination of the Employee's employment, for the purpose of making sales of skin or blister packaging cards, to that entity, regardless of whether such entity has been personally contacted in the past by the Employee.

(*Id.* at ¶ 11).

In the spring of 2005, Denson quit his employment with Rohrer, and subsequently began working with Packaging Graphics as a sales representative. (*Id.* at ¶¶ 12, 14). In 2006, Rohrer learned that Denson repeatedly violated the Employment Agreement by soliciting several entities, with which it does business, for the purpose of selling them skin and blister packaging cards and/or other intertwined packaging products. Accordingly, On March 31, 2006, Rohrer

sued both Denson and Packaging Graphics in an Ohio court, asserting Denson violated the restrictive covenant contained in his Employment Agreement and that both Denson and Packaging Graphics misappropriated Rohrer's confidential and trade secret information. (*Id.* at ¶15). Before the Ohio state court had journalized an order granting Rohrer's motion for a temporary restraining order enforcing the covenant above against Denson and Packaging Graphics, Plaintiffs removed the matter to an Ohio federal court. The parties ultimately agreed to a stipulated Order enforcing the covenant against Denson. (*Id.* at ¶¶ 17, 18). The rest of the lawsuit is still in progress. (*Id.*).

On May 1, 2006, John Rohrer informed some of Rohrer's customers of the Ohio lawsuit, which is public record. (*Id.* at ¶¶ 19). John Rohrer wrote a letter to these customers providing the language of the Ohio Court's Order. (May 1, 2006 Letter, attached as Exhibit B to the Verified Complaint). In that letter, Packaging Graphics is mentioned only once: "Recently, [Denson] joined Packaging Graphics, LLC in Pawtucket, Rhode Island." It is this May 1, 2006 letter that is the center of this Rhode Island litigation and is the sole basis for the Plaintiffs' claims. Although one customer responded to this letter by informing Rohrer that it had "nothing to worry about," another customer provided Rohrer with additional information that will establish Denson violated the express terms of his Employment Agreement by soliciting an entity with which Rohrer has done business, as that term is defined in the Employment Agreement, with the express purpose of selling it skin and blister packaging cards.

## **III. LAW AND ARGUMENT.**

**A. Standard of Review and Statement of Elements.** A preliminary injunction is an extraordinary form of relief that may be either prohibitory (i.e., restraining affirmative action) or mandatory (i.e. compelling affirmative action). *Flex-Let Corp. v. Curran*, 111 F.Supp. 536 (D.C.

R.I. 1953); *Santilli v. Morelli*, 102 R.I. 333 (1967). Although the burden on the party requesting injunctive relief is high in either case, it is extremely high when mandatory injunctive relief is requested. Indeed, it is only granted in rare cases "of great urgency and when the right of the complainant is very clear." *Shumski v. Diluglio*, Ca. No. 86-4836, 1987 WL 859669 (R.I. Super. Jan. 13, 1987); *Giacomini v. Bevilacqua*, 118 R.I. 63 (R.I. 1977).

Plaintiffs' request that this Court engage in a prior restraint of Defendants' free speech rights should be rejected because such relief violates the First Amendment to the United States Constitution. Plaintiffs' request for mandatory relief in the form a written retraction should likewise be rejected because they cannot meet their extraordinarily high burden to prove that such relief is necessary (or even permissible). Plaintiffs' requests for injunctive relief should also be denied because they cannot prove any of the following required elements: (1) that they will likely prevail on the merits of their claims; (2) that they have suffered any injuries that cannot be compensated by a monetary damages remedy; or, (3) that either the balance of the equities or the public interest would be served by the proposed prior restraint on Defendants' right to free speech. *Nicholson File Co. v. H.K. Porter Co.*, 341 F.Supp. 508 (D.C.R.I. 1972).

**1. Plaintiffs' Request this Court to Impose an Unconstitutional Prior Restraint on Speech in Violation of the First Amendment to the United States Constitution.**

Virtually every court in the nation that has addressed the issue, including the First Circuit, has clearly stated that prohibitory injunctive relief may not be granted to restrain allegedly defamatory speech:

> If a publisher is to print a libelous, defamatory, or injurious story, an appropriate remedy, though not always totally effective, lies not in an injunction against that publication but in a damages or criminal action *after* publication. Although the threat of damages or criminal action may chill speech, a prior restraint "freezes" speech before the audience has the opportunity to hear the message.

*In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986)(emphasis in original) *citing Near v. State of Minnesota*, 283 U.S. 697 (1931). *See also, Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976); *Metropolitan Opera Association v. Local 100, Hotel Employees and Restaurant Employees International Union*, 239 F.3d 172 (2nd Cir. 2001)("[C]ourts have long held that equity will not enjoin a libel."); *Kramer v. Thompson*, 947 F.2d 666, 677-678 (3rd Cir. 1991) ("[T]he maxim that equity will not enjoin a libel has enjoyed nearly two centuries of widespread acceptance at common law."); *Community for Creative Non-Violence v. Pierce*, 814 (F.2d 663 (D.C. Cir. 1987)("The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages."); *American Malting Co. v. Keitel*, 209 F. 351 (2nd Cir. 1913)("Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury may be. This is the universal rule in the United States…."); *Manufacturers' Outlet Co. v. Longley*, 20 R.I. 86 (1897)(denying injunction for alleged defamatory statements and holding that remedy for defamation is damages, not injunction); *Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc. v. Sullivan*, 251 Neb. 722, 729 (1997)(citing over a dozen cases from various state and federal jurisdictions). This is because, in addition to defamatory statements being easily remedied by a monetary damages award (which is discussed in greater detail below), injunctions imposing prior restraints on speech violate the First Amendment to the United States Constitution. *In re Providence Journal Co.*, 820 F.2d at 1345-1346.

Under the First Amendment, there is a heavy presumption that prior restraints on speech, such as the injunction requested by the Plaintiffs in this case, are constitutionally invalid. *Organization for Better Austin v. Keefe*, 402 U.S. 415 (1971). Indeed, prior restraints are considered the most serious and least tolerable infringement on First Amendment rights. *Stuart*,

427 U.S. at 559 (1976). As the Supreme Court has noted, injunctions carry a uniquely distinct risk of First Amendment infringement that is even greater than other forms of governmental intrusion on free speech. *Madsen v. Women's Health Center*, 512 U.S. 753 (1994)("Injunctions...carry greater risks of censorship and discriminatory application than do general ordinances.") That is because none of the protections afforded in an action for monetary damages are available in an injunction action. *Stuart*, 427 U.S. at 559. For example, there is not a right to a jury trial in an injunction action. *Rodriguez v. Munoz*, 808 F.2d 138, 142 (1st Cir.1986). Further, the "freezing" impact on speech is immediate in an injunction action. *Id.* An injunction must be obeyed until modified or dissolved, and its unconstitutionality is not a defense to disobedience. *Walker v. Birmingham*, 388 U.S. 307, 314-321 (1967); In *re Providence Journal Co.*, 820 F.2d at 1345-1346. In contrast, the "chilling" impact on speech in a damages action is deferred until all avenues of appeal have been exhausted. *Stuart*, 427 U.S. at 559.

Courts acknowledging and applying these principals have refused to violate the First Amendment by issuing a prior restraint on allegedly defamatory speech in the form of a prohibitory injunction. For example, in *Kramer v. Thompson*, the district court issued a prohibitory injunction that restrained the defendant from further publishing statements that it had previously determined as a matter of law to be defamatory. *Kramer*, 947 F.2d at 669. The circuit court reversed, however, finding that the injunction constituted an impermissible prior restraint in violation of the defendant's free speech rights. *Id.* at 678. *See also, Metropolitan Opera Association*, 239 F.3d at 178-179 (vacating an injunction issued by the district court that restrained a union from "engaging in fraudulent or defamatory representations regarding [the plaintiff] and/or its donors, directors, officers and/or patrons"); *J.Q. Office Equipment of Omaha,*

*Inc. v. Sullivan*, 230 Neb. 397 (1988)(First Amendment prohibited issuance of injunction against allegedly defamatory speech that allegedly tortiously interfered with plaintiff's business); *Willing v. Mazzocone*, 482 Pa. 377 (1978)(finding an unconstitutional prior restraint on right of free speech when lower court enjoined a law-firm's former client from demonstrating against lawyers by carrying "sandwich-board" denouncing lawyers as having stolen money from her, even though it appeared that such accusation was wholly without foundation.")

Here, the Plaintiffs' seek an even more drastic remedy than the injunction that was rejected by the court in *Kramer v Thompson* because the statements that they seek to enjoin are merely *alleged* to be defamatory. Unlike in *Kramer*, neither this Court nor a jury has made any determination regarding the alleged defamatory nature of the Defendants' statement. As is discussed in more detail below and in Defendants' motion to dismiss, it is the Defendants' vehement position that its communications to its customers regarding Denson's breaches of contract and the status of the Ohio Litigation cannot be considered defamatory as a matter of law. Given these circumstances, this Court should not forbid the Defendants from engaging in their right to freely communicate their opinions relating to Denson and his business practices to their own customers. Likewise, this Court should not restrain the Defendants from exercising their right to report the status of, and articulate their views regarding the Ohio Litigation to their customers. To do so would trample on the First Amendment the United States Constitution.

Plaintiffs may argue that the Defendants' communications to their customers are "commercial speech", and therefore are subject to a lesser degree of scrutiny than non-commercial speech. This argument should be rejected, however, because the First Circuit has limited the definition of commercial speech to speech that merely proposes a commercial transaction. *Wine and Spirits, Inc. v. Rhode Island*, 418 F.3d 36 (1st Cir. 2005)(finding that the

speech in question did not propose a commercial transaction and, for that reason alone, was not commercial speech as a matter of law). *See also, Bolger v. Youngs Drug Products Corp.* 463 U.S. 60 (1983)(stating the "core notion" of what constitutes commercial speech is speech that does no more than propose a commercial transaction.); *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469 (1989)(stating that whether the speech in question proposes a commercial transaction is "the test" for determining whether the speech is commercial speech.) Unquestionably, the Defendants' statements do not fit within this narrow category of speech. Even so, the commercial speech doctrine still protects the communication of truthful information to customers. *Wine and Spirits, Inc.*, 418 F.3d at 49. Because the Defendants did no more than tell the truth and express their opinions in their communications, their statements enjoy First Amendment protection even if they constitute commercial speech.

Defendants have a First Amendment right to engage in uninhibited discussions with their customers regarding their opinions of Denson and his business practices. They also have a right to engage in free discussions regarding the Ohio Litigation. Accordingly, this Court should reject the Plaintiffs' request to impose any prior restraint on the Defendants' right to engage in free speech regarding these matters.

**2. No Extraordinary Emergency Exists to Warrant the Drastic Remedy of Mandatory Injunctive Relief.** Extreme circumstances do not exist here that would justify the issuance of a mandatory injunction. A request for mandatory injunction is governed by stricter standards than that of a prohibitory injunction:

> When an injunction mandatory in its nature is asked for, a stricter rule obtains. Owing to the extraordinary character of the remedy it should be granted on preliminary application only in cases of **great urgency** and when the right of the complainant is **very clear.**

*Giacomini*, 118 R.I at 65 (emphasis added). Here, the Plaintiffs request that the Court compel the Defendants to draft and deliver a written retraction of statements they made to their own customers. Since, from counsel for Defendants' review of state and federal case law, it does not appear that any court in the nation has ever granted such relief, it is hard to imagine how Plaintiffs' could possibly have a clear right to such relief. *See, Kramer v. Thompson*, 947 F.2d 666 (3rd Cir. 1991)("We have reviewed the available literature and reported decisions. Although the notion of *compelled* retraction occasionally has been advanced in the literature, we have not found a single case in which such a remedy was awarded.")(emphasis in original). In fact, those few courts that have addressed the issue have refused to affirmatively require a defendant to issue a written retraction. *Id.; see also Rombom v. Weberman*, Ca. No. 1378/00, 2002 WL 1461890 at *12 (N.Y. Sup. June 13, 2002)(rejecting plaintiff's request for mandatory injunction compelling a retraction of statements determined to be defamatory by a jury and citing an absence of any authority for such relief).

As is discussed in more detail below, Plaintiffs do not have a "clear right" of recovery on any of the claims asserted in their Verified Complaint. Neither is there even an allegation by the Plaintiffs of any "great urgency", which is required for mandatory relief. Any alleged damages that Plaintiffs have suffered as a result of lost sales to current or potential customers can easily be compensated by monetary damages at a later date. And, even if this Court determines that a monetary damages remedy is insufficient, there is no reason why the requested retraction cannot wait until after Plaintiffs' claims are finally decided by a jury.

Accordingly, because Plaintiffs cannot establish a "clear right" to either the remedy requested, or to recovery under their underlying claims, and there is no "great urgency" requiring an immediate retraction, Plaintiffs' request for a mandatory injunction must be denied.

**3. Plaintiffs Have No Probability of Success on the Merits of Their Claims.** Defendants have fully stated their arguments articulating why Plaintiffs have no probability of success on the merits of their claims in their memorandum in support of their motion to dismiss ("Motion to Dismiss Memorandum"), which is attached hereto as Exhibit A. To avoid unnecessary duplication, Defendants incorporate those arguments into this brief. For the Court's convenience, however, a brief summary of the salient points addressed in the Motion to Dismiss Memorandum follows.

Plaintiffs have no probability of success on their defamation claims because:

- Under Rhode Island law, only statements imputing (1) insolvency; (2) financial embarrassment; (3) unworthiness of credit; or (4) failure in business can be considered libel *per se*. *Swerdlick v. Koch*, 721 A.2d 849, 861 (R.I. 1998). Plaintiffs do not even allege that Defendants' statements fall into any of these categories and therefore they cannot be libel *per se* as a matter of law.

- Simply accusing a person of a breach of contract cannot be defamation *per quod* as a matter of law. *Kent v. American Tenant Screen, Inc.*, No. Civ. S 97-2838 (D. Maryland 1997).

- Because Defendants disclosed the facts underlying their opinions (which are also a matter of verifiable public record) regarding Denson and his business practices, and it was clear that their statements were merely opinions, they were privileged as a matter of law in making the allegedly defamatory statements – even if they were unjustified or intentionally dishonest in doing so. *Cullen v. Auclair*, 809 A.2d 1107, 1110 (R.I. 2002).

- The statements in the letter were not "of and concerning" Packaging Graphics, which was merely identified as Denson's employer. It was not accused of breaching any contract or engaging in any other unethical behavior. Accordingly, Packaging Graphics' defamation claim fails for that reason alone. *Budget Termite & Pest Control, Inc. v. Bousquet*, 811 A.2d 1169, 1172 (R.I. 2002).

Plaintiffs have no probability of success on their tortious interference because:

- Defendants' are protected by a "competitor's privilege", which permits them to interfere, even intentionally, with Plaintiffs' contractual relations, because they have a financial interest at stake and they did not use improper means to protect that interest. *Federal Auto Body Works, Inc. v. Aetna Casualty & Surety, Co.*, 447 A.2d 377, 379-380 (R.I. 1982).

- The letter that the Defendants sent to their customers cannot be considered "improper means" as a matter of law because, even if the statements regarding the scope of the Ohio court's order were false or misleading (which they were not), the actual text of that order was recited in the letter. Accordingly, Defendants' customers could easily decide for themselves whether Defendants' proffered interpretation of the Ohio court's order was correct.

Plaintiffs have no probability of success on their unfair competition claims because:

- No cause of action, as it is described in the Verified Complaint, exists for "unfair competition" under Rhode Island law.

For these reasons, which are more fully articulated in the memorandum in support of Defendants' motion to dismiss, the Plaintiffs cannot meet their burden to show that it is likely they will prevail on the merits of any of their claims.

**4. Plaintiffs' Alleged Injuries Can Be Easily Compensated By an Monetary Damages Remedy.** The First Circuit, and over a dozen other courts, have all stated that the proper remedy for injuries resulting from allegedly false statements is monetary damages, and not injunctive relief. *In re Providence Journal Co.*, 820 F.2d at 1345-1346 (stating that remedy for injury resulting from false statements "lies not in an injunction against that publication but in a damages or criminal action *after* publication")(emphasis in original); *Metropolitan Opera Association*, 239 F.3d at 177 (stating that "ordinarily libels may be remedied by damages"); *Longley*, 20 R.I. at 86 (denying injunction for alleged defamatory statements and holding that remedy for defamation is damages, not injunction); *Kramer*, 947 F.2d at 677-678; *Community for Creative Non-Violence*, 814 F.2d at 672 (same); *American Malting Co.*, 209 F. at 354 (same); *Sullivan*, 251 Neb. at 729(same and citing over a dozen cases with similar holdings). This is true, even if a monetary damages remedy is not "totally effective". *In re Providence Journal Co.*, 820 F.2d at 1345-1346; *Krebiozen Research Foundation v. Beacon Press*, 334 Mass. 86 (1956)(stating "our law thinks it better to let the defamed plaintiff his damages for what

they are worth than to entrust a single judge (or even a jury) with the power to put a sharp check on the spread of the possible truth").[1] Regardless, monetary relief will be sufficient here because the Plaintiffs' are primarily seeking relief for lost sales to customers and potential customers. Accordingly, the Plaintiffs' cannot establish the "irreparable harm" element as a matter of law.

**5. Neither the Balancing of the Equities Nor the Public Interest Favor a Prior Restraint on Defendants' Right to Free Speech.** Plaintiffs' request that this Court ignore the free-speech protections afforded to the Defendants by the First Amendment does not serve the public good. In fact, if this Court were to engage in a prior restraint of Defendants' speech, it would do significant harm to one of the most sacred rights bestowed to this country by our founding fathers. This consequence, weighed against the fact that Plaintiffs' alleged damages can be easily compensated with a monetary award, makes it clear that the balance of equities falls in Defendants' favor and that the public interest is best served by ensuring that the protections afforded by the First Amendment are not sacrificed.

## IV. CONCLUSION

Plaintiffs' request for a preliminary injunction restricting Defendants free speech rights and mandating a written retraction must be denied for the following reasons:

1. The majority of courts have consistently held for centuries that injunctive relief is not available to effect a prior restraint of allegedly false statements.

---

[1] Plaintiffs cite a single New York district court case, in which the plaintiffs' motion for a TRO was granted, but its motion for a preliminary injunction was denied, for the proposition that irreparable harm is "particularly evident" in defamation cases. *Xelus, Inc. v. Servigistics, Inc.*, 371 F. Supp. 2d 387 (W.D.N.Y. 2005); (Plaintiffs Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction at pg. 11). That case is clearly in the minority and should be disregarded considering the First Circuit, and virtually every other court's, pronouncements on the subject. Further, it should be noted that a much stronger argument for irreparable harm existed in that case than here because the defendant's statements were deliberately interfering with a specific and imminent acquisition. *Id.* at 390. No such facts exist here. Also, the defendant's statements appear to have been made while it was in the course of proposing a business transaction because the court determined that the speech in question was commercial speech. *Id.* at 391. That may account for the court's relaxation of the First Amendment protections. As is discussed above, however, such relaxed First Amendment safeguards are inappropriate here.

2. Plaintiffs cannot meet their extraordinary burden to show that there is a "great urgency" here or that they have a "clear right" to their requested mandatory remedy. This is especially true considering that no court has ever required a defendant to issue a written retraction for allegedly false statements and that every court that has considered the issue has expressly refused to do so.

3. Plaintiffs have no probability of success on the merits of their defamation claims because Defendants' statements were non-defamatory and privileged opinion statements regarding matters of public record.

4. Plaintiffs have no probability of success on the merits of their tortious interference claims because Defendants' were privileged in making allegedly false statements so that they could protect their legitimate financial interests.

5. Plaintiffs have no probability of success on the merits of their unfair competition claim because no such claim exists under Rhode Island law.

6. Plaintiffs cannot establish the irreparable harm element because nearly every court has clearly stated that monetary damages, and not injunctive relief, are the appropriate remedy for allegedly false statements.

7. The balance of the equities and the public interest favor this Court refusing to engage in a prior restraint of Defendants' speech.

WHEREFORE, the Defendants Rohrer Corporation and John P. Rohrer, respectfully request that this Honorable Court deny the plaintiff's motion for a preliminary injunction.

Respectfully submitted,
Defendants, Rohrer Corp. and John Rohrer
By their attorneys

Daniel K. Kinder (2151)
George H. Rinaldi (5599)
**LITTLE MEDEIROS KINDER BULMAN & WHITNEY PC**
72 Pine Street
Providence, R.I. 02903
Telephone: (401) 272-8080
Fax: (401) 272-8195
Email: dkinder@lmkbw
grinaldi@lmkbw

Thomas J. Wiencek
(Motion for admission pro-hac vice pending)
twiencek@brouse.com
Hans A. Nilges
(Motion for admission pro-hac vice pending)
hnilges@brouse.com
**BROUSE McDOWELL**
388 South Main Street, Suite 500
Akron, Ohio 44311-4407
Ph: (330) 535-5711
Fax: (330) 253-8601

Dated: June 12, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2006, I caused a true and accurate copy of the foregoing to be sent via hand-delivery to the following:

Charles S. Beal
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, R.I. 02903

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2006, I caused a true and accurate copy of the foregoing to be sent via hand-delivery to the following:

Charles S. Beal
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, R.I. 02903

______________________________