**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**PACKAGING GRAPHICS LLC, and** )
**JOHN A. DENSON** )
**Plaintiffs,** )
)
**v.** ) **CASE NO: 06-230-ML**
)
**ROHRER CORPORATION, AND** )
**JOHN P. ROHRER** )
**Defendants**

**DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFFS' OBJECTION TO THE ADMISSION OF ATTORNEYS HANS A. NILGES AND THOMAS J. WIENCEK PRO HAC VICE**

## I. INTRODUCTION

Brouse McDowell's representation of Plaintiff John Denson 20 years ago in a litigation involving different parties, facts, and issues cannot be used as a tool by the Plaintiffs to deprive the Defendants of their right to be represented by counsel of their choice in this action. Ironically, however, it is the Plaintiffs that seek disqualification despite the fact that their law firm in the connected Ohio litigation employs one of Brouse McDowell's former partners of 20 years. Regardless of their contradictory positions, there are simply no facts or issues from this previous litigation that relate to the present matter. This Court should therefore overrule the Plaintiffs' Objection, and grant admission of attorneys Hans A. Nilges and Thomas J. Wiencek *pro hac vice*.

## II. STATEMENT OF FACTS

**A. The Current Controversy.** Defendant Rohrer Corporation ("Rohrer") is an Ohio corporation engaged in the business of selling packaging products. Rohrer's Chief Executive Officer and Chairman of the Board is Defendant John Rohrer. Plaintiff Packaging Graphics, LLC ("Packaging Graphics") is one of Rohrer's competitors that recently hired an ex-Rohrer

employee, Plaintiff John Denson ("Denson"). This action arises out of Denson's subsequent employment with Packaging Graphics.

While working with Rohrer as a sales representative, Denson entered in an Employment Agreement, which contained a restrictive covenant. Pursuant to that restrictive covenant, Denson agreed for a period of two years after terminating his employment with Rohrer, he would not engage in certain competitive activities:

> [T]he Employee covenants and agrees that for a period of two years after the termination of his employment whether by termination of this or any successor Agreement, by wrongful discharge, voluntary termination, or otherwise, the Employee shall not, directly or indirectly, within the existing marketing area of the Company, engage, alone or as an officer, employee, partner, agent, joint venture, director, or shareholder, in the solicitation of any entity with whom [Rohrer] has done business within the two (2) year period immediately preceding the termination of the Employee's employment, for the purpose of making sales of skin or blister packaging cards, to that entity, regardless of whether such entity has been personally contacted in the past by the Employee.

In spring 2005, Denson quit his employment with Rohrer, and began working with Packaging Graphics as a sales representative in late 2005. On March 31, 2006, Rohrer sued both Denson and Packaging Graphics in Ohio court (the "Ohio Litigation"), asserting breach of the restrictive covenant contained in his Employment Agreement, violation of the Ohio Trade Secrets Act, and tortious interference with business relations. In support of the Trade Secrets Act claim, Rohrer alleges that Denson misappropriated protected information, including, but not limited to Rohrer's confidential customer information. Rohrer engaged Brouse McDowell ("Brouse") as its attorney for this action. A temporary restraining order was issued by consent order, and the Ohio Litigation is currently pending.

On May 1, 2006, John Rohrer informed some of its customers and former customers of the Ohio Litigation. Specifically, John Rohrer wrote a letter to these customers providing the language of the Ohio Court's temporary restraining order. As a result of this letter, Denson and

Packing Graphics initiated this current litigation, alleging defamation, tortious interference with advantageous relations, and unfair competition. Again, Rohrer Corporation and John Rohrer engaged Brouse for this matter, and on May 23, 2006, attorneys Hans A. Nilges and Thomas J. Wiencek moved for admission *pro hac vice*.

**B. <u>The Georgia Litigation.</u>** Prior to working with Rohrer, Denson was a sales representative for Colonial Packaging Company ("Colonial"). On November 18, 1985, Denson terminated his employment with Colonial and began working for Rohrer.

Then, on November 22, 1985, Colonial sued Denson and Rohrer in Georgia state court. (the "Georgia Litigation"). In that action, Colonial brought claims for misappropriation of trade secrets, tortious interference with Denson's employment contract, tortious interference with contractual relations and business expectations, fraud, and conspiracy to commit fraud. In its trade secrets claim, Colonial complained that Denson took documents and property reflecting Colonial's pricing activities, marketing strategies, and customer lists with sales histories. Rohrer and Denson hired Brouse to defend against these claims. This action was voluntarily dismissed on October 6, 1986.

## III. LAW AND ARGUMENT

**A. <u>Standard of Review.</u>** Under Rhode Island law, motions to disqualify are generally disfavored. *Fregeau v. Deo*, R.I. Super. No. C.A. PC 03-4179, 2005 WL 1837011, at *3. This disapproval rests on the fact that these objections "separate a client from a chosen attorney, inevitably cause delay, and are often made only for tactical reasons." *Id. See also*, *Gray v. Rhode Island Dept. of Children, Youth and Families*, 937 F.Supp. 153, 156 (D.R.I. 1996) ("It is also necessary that the court remain skeptical of disqualification motions because of the increasingly strategic manner in which they are used."); R.I. Supreme Court Rules of Prof.

Conduct, Art. V, Rule 1.7 (Commentary) ("Such an objection should be used with caution, however, for it can be misused as a technique of harassment.").

As a result, parties seeking to disqualify opposing counsel must overcome a high burden of proof. *Fregeau*, 2005 WL 1837011, at *3. And unless the judicial process will be tainted by the attorneys' conduct, courts should be reluctant to disqualify attorneys of the party's choosing. *Gray*, 937 F.Supp. 153 at 156. Here, Plaintiffs fail to shoulder this heightened burden.

**B.** ***Plaintiffs Produced No Evidence To Satisfy Their Burden.*** Despite the fact that it is their burden to demonstrate that a conflict exists, the Plaintiffs offered no testimonial evidence, including affidavits, nor did they attach any documentary evidence to support their contention. Plaintiffs instead rely solely on their bald assertions that a conflict exists. But these assertions are not enough:

> In order to prove a substantial relationship between two matters, the [party with the burden] must produce evidence of specific similarities capable of being recited in the disqualification order. Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard. Furthermore, the [party with the burden] may not rely upon conclusory statements but must provide the trial court with sufficient information so that it can engage in a painstaking analysis of the facts.

*Schick v. Berg*, 2004 WL 856298, *10 (S.D.N.Y. Apr. 20, 2004) (quoting *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 579 (Tex.App.1998)). Accordingly, Plaintiffs' objection based upon a conflict of interest fails as a matter of law as they cannot possibly meet their burden without supporting evidence. However, as discussed below, even if Plaintiffs could support their conclusory statements, their objection is nonetheless meritless.

**C.** ***The Georgia Action Is Not Substantially Related To This Action.*** A 20 year old litigation involving Rohrer, Denson, and an employer that ceases to exist, does not create the foundation to form a conflict of interest under Rule 1.9. The Georgia Litigation rested on an

entirely distinct set of facts than those relied on in this case. At best, the Georgia Litigation shared two titled causes of action with the Ohio Litigation and the present action. Regardless of the possible similarity in titles of the claims, however, the underlying issues in that case do not intersect any issue at hand. Accordingly, this Court should admit attorneys Hans A. Nilges and Thomas J. Wiencek *pro hac vice*, as there is no conflict of interest under Rule 1.9.

Rhode Island's Professional Conduct Rule 1.9 provides when a lawyer has a conflict of interest concerning a former client:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

The determination into whether a matter is "substantially related" requires a showing that the relationship between the issues in the prior and present cases is patently clear or that the issues are identical or essentially the same. *Brito v. Capone*, 819 A.2d 663, 665 (R.I. 2003). Further clarifying when matters are substantially related, the Comment following Rhode Island's Professional Conduct Rule 1.9 is particularly appropriate:

> When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, ***a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client***. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

(Emphasis added). Based upon Rhode Island law, the prior and present actions at issue here are not substantially related.

The Georgia Litigation involved Denson's departure from Colonial and alleged misappropriation of Colonial's trade secrets. Neither the Ohio Litigation nor current litigation touch upon Denson's employment or resignation from Colonial or any information misappropriated from that employer. For the Ohio litigation, Denson's previous employment with Colonial 20 years prior plays no role in resolving:

(1) Whether Denson breached his employment contract with ***Rohrer***;

(2) Whether Denson and Packaging Graphics misappropriated ***Rohrer's*** confidential customer information; and

(3) Whether Denson and Packaging Graphics' intentionally interfered with ***Rohrer's*** business relationships.

Denson's employment relationship with Colonial and any Colonial trade secret under Georgia law have no bearing on these issues. Instead, these two litigations involve different aggrieved employers, different employment contracts, and different events that are 20 years apart. No claim can be made that these issues are "essentially the same."

In addition, Rhode Island Rules of Professional Conduct permits lawyers to handle a type of problem with a client (e.g., defending a trade secrets claim involving one employer) and later represent another client in a distinct problem of that type (e.g., alleging a trade secrets claim involving a different employer), even though the current action is adverse to the former client. *See* R.I. Prof. Cond. Rule 1.9 (Comment). And here, there is an even greater distinction between the two actions since the Ohio Litigation centers primarily on a restrictive covenants entered into by Denson, while the Georgia Litigation did not concern a breach of contract.

This is not a situation where Brouse changed "sides in the matter in question," and now argues that Denson did misappropriate trade secrets from Colonial or tortiously interfered with Colonial's contractual relations. *See id.* That litigation has passed and the matters involved have long been resolved. Their reemergence in the Ohio Litigation is unnecessary, irrelevant and will not occur.

Plaintiffs' attempts to find a conflict of interest is based in large part on the reasoning of *Kaselaan & D'Angelo Associates v. D'Angelo*, 144 F.R.D. 235 (D.N.J. 1992). But there is one glaring setback with that reliance: *Kaselaan* interprets New Jersey's Rules of Professional Conduct. *Id.* at 243 ("New Jersey law should guide the decision of this court since the New Jersey Rules of Professional Conduct specifically apply to this matter."). In this District, the Standards of Professional Conduct "shall be the Rules of Professional Conduct as adopted by the Rhode Island Supreme Court." L.R. Gen. 208. And although New Jersey's Rules are based upon the Model Rules, New Jersey courts have applied them in much more stringent manner than most jurisdictions. *See In Re County of Bergen*, 268 N.J. Super. 403, 408 (1993) ("Our Rules of Professional Conduct are stringently enforced, and would even appear to be stricter than those of other states."); *Kaselaan*, 144 F.R.D. at 243 ("Thus, the evolution of this more narrow interpretation of "substantially related" at the federal court level is inconsistent with the general dictates of New Jersey state law."). *See also, Kaminski Brothers, Inc. v. Detroit Diesel Allison*, 638 F.Supp. 414, 417 (M.D.Pa. 1985) (noting that a liberal interpretation, such as the one adopted in *Kaselaan*, would cause virtually any prior representation of a current adversary to serve as grounds for disqualification).

But assuming for argument that *Kaselaan* interpreted Rhode Island law, it is factually dissimilar to the instant matter. There, the employee's attorney, just two years earlier, was

engaged by the employer for a period of four years in connection with claims against former employees. In working with employer, the attorney assisted in drafting restrictive covenants similar to the one at issue. But unlike the attorney in *Kaselaan*, Brouse did not have a recurrent relationship with Denson. Rather, Brouse represented Denson in one matter along with Rohrer. The Georgia Litigation also did not involve an interpretation of the restrictive covenant at issue, or a similar one; it did not involve a restrictive covenant at all. Finally, instead of two years separating the matters, Brouse's representation of Denson occurred twenty years earlier.

Although Plaintiffs seem to argue disqualification for the Ohio litigation,[1] the real question is whether the current Rhode Island action is substantial related to the Georgia Litigation. Here, Plaintiffs allege a defamatory letter was sent to others and that letter tortiously interfered with their advantageous relations, thereby resulting in unfair competition. The determination of the validity of those claims clearly does not turn on any issue concerning Denson's employment with Colonial or the subsequent litigation caused by his departure. Since the Ohio Litigation is not substantially related to the Georgia Litigation, Plaintiffs' argument for a substantial relationship with the current litigation is far weaker.

## IV. CONCLUSION

Plaintiffs have the burden of demonstrating a conflict of interest that would preclude Attorneys Nilges and Wiencek's admission *pro hac vice*. Plaintiffs failed to meet their burden for two reasons: (1) lack of evidentiary support; and (2) lack of legal support. The lack of evidentiary support speaks for itself as they provided no documentary or testimonial evidence of

[1] Interestingly, neither Denson nor Packaging Graphics has moved to disqualify Brouse in the Ohio Litigation, and for good reason. Such a tactical decision would call into question whether Denson and Packaging Graphics' Ohio counsel should be disqualified as well since their partner, Mary Whitmer, worked at Brouse for approximately 20 years until 2002. During Mary Whitmer's 20 year tenure at Brouse, Rohrer Corporation was a significant client.

a conflict. Their lack of legal support is due to the distinct factual issues involved in the prior and present cases.

20 years ago, Brouse represented Denson and Rohrer in a litigation concerning misappropriation of Colonial's customer and pricing information under Georgia Law. 20 years later, Colonial's trade secrets will not help determine whether Denson breached his agreement with Rohrer, whether Denson and Packaging Graphics tortiously interfered with Rohrer's contractual relations, or whether Denson and Packaging Graphics misappropriated Rohrer's confidential customer information. But more importantly, that 20 year old litigation will not help resolve the Plaintiffs' defamation and tortious interference actions; the actions that are before this Court[2]. Accordingly, this Court should overrule the Plaintiffs' Objection and grant Defendants' Motion to Admit Attorneys Hans A. Nilges and Thomas J. Wiencek *pro hac vice.*

Respectfully submitted,
Defendants, Rohrer Corp. and John Rohrer
By their attorneys

Daniel K. Kinder (2151)
George H. Rinaldi (5599)
**LITTLE MEDEIROS KINDER BULMAN & WHITNEY PC**
72 Pine Street
Providence, R.I. 02903
Telephone: (401) 272-8080
Fax: (401) 272-8195
Email: dkinder@lmkbw
grinaldi@lmkbw

[2] Plaintiffs also pled a cause of action for "Unfair Competition", which does not exist under Rhode Island law. Apparently they have abandoned that cause of action, however, because they have failed to respond to it in any manner in their response to Defendants' motion to dismiss.

Thomas J. Wiencek
(Motion for admission pro-hac vice pending)
twiencek@brouse.com
Hans A. Nilges
(Motion for admission pro-hac vice pending)
hnilges@brouse.com
**BROUSE McDOWELL**
388 South Main Street, Suite 500
Akron, Ohio 44311-4407
Ph: (330) 535-5711
Fax: (330) 253-8601

Dated: June 12, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2006, I caused a true and accurate copy of the foregoing to be sent via hand-delivery to the following:

Charles S. Beal, Esq.
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, R.I. 02903