**AFFIDAVIT OF JOANNE ROHRER**

STATE OF OHIO )
)
COUNTY OF MEDINA )

I, Joanne Rohrer, swear and affirm the following is true and accurate and is based on my personal knowledge.

1. I am the Treasurer of Rohrer Corporation ("Rohrer"), which is an Ohio corporation engaged in the business of manufacturing and selling what are referred to as "skin" and "blister" packaging products.

2. In my role as Treasurer, I am responsible for various financial, administrative, and human resources functions and have personal knowledge of such matters.

3. I am also the custodian of records for Rohrer.

4. The documents attached as Exhibits 1 through 5 attached to Rohrer's memorandum in opposition to Defendants' motions to dismiss, which is being filed contemporaneously with this affidavit, are true and accurate copies of documents maintained as Rohrer's business records.

**BACKGROUND**

5. Rohrer's corporate headquarters and principal place of business, including certain manufacturing functions, are in Wadsworth, Ohio.

6. It also has manufacturing facilities in Georgia, and Illinois. Its customers are located throughout the United States, including Ohio.

7. Essentially, Rohrer manufactures the plastic packaging in which its client's products are sold. It also prints the artwork contained on cardboard packaging cards to which the plastic packaging is attached.

8. Typically, the cardboard cards and the plastic packaging are sold together as a unit. And, that is how a retail customer will purchase the end product when it is actually sold in a store.

9. Among Rohrer's most recognizable clients are The Stanley Works, Inc. and Energizer. Accordingly, as an example of Rohrer's products and services, everything that makes up a package of Stanley tools or a package of Energizer batteries (other than the tools and batteries themselves), including the plastic packaging and the printed cardboard cards, is manufactured, printed, and sold by Rohrer.

**JOHN DENSON'S TWENTY YEAR EMPLOYMENT RELATIONSHIP WITH ROHRER CORPORATION**

10. Prior to joining Rohrer, Denson worked for Colonial Packaging Corporation ("Colonial Packaging"), a company located in Georgia, which was also where he resided.

11. In October 1985, however, Denson initiated his twenty (20) year employment relationship with Rohrer by reaching out to it and expressing an interest in becoming an employee.

12. At that time, Rohrer was a larger and more nationally oriented company than Colonial Packaging.

13. Denson submitted a formal employment application on November 11, 1985, which was received and processed at Rohrer's headquarters in Wadsworth, Ohio.

14. The President of Rohrer, John Rohrer, made the decision in Ohio to retain Denson as a sales representative.

15. Denson officially began his employment with Rohrer on November 18, 1985.

16. Each year that Denson was employed by Rohrer, he executed an employment contract in Wadsworth, Ohio.

17. Accordingly, he executed approximately twenty (20) employment contracts with Rohrer in Ohio.

18. These employment contracts were substantially the same – the only remarkable difference being that the compensation and customer assignments would be periodically adjusted.

19. Any negotiations relating to Denson's employment agreements, which would primarily consist of discussions relating to Denson's compensation and customer assignments, would take place between Denson and Rohrer personnel, including John Rohrer, in Wadsworth, Ohio.

20. Every employment contract contained a restrictive covenant, which prohibited Denson from contacting any Rohrer customer for a period of two years after the termination of the employment agreement or any successor agreement.

21. In addition to this restriction on customer contact, Denson also formally agreed approximately twenty (20) times not to use, disclose, or retain any of Rohrer's confidential information after the termination of his employment.

22. Denson further agreed approximately twenty (20) times to return all of its confidential information and other property to Wadsworth, Ohio upon the termination of his employment.

23. Denson has retained and failed to return a significant amount of Rohrer's property without Rohrer's express consent including, but not limited to, confidential sales and pricing records.

24. Denson sent Rohrer a formal notice of his intent to terminate his 2000-2001 employment contract to Rohrer's Ohio headquarters in 2001.

25. In that letter he also announced his intention to join Rohrer's competitor, Packaging Graphics.

26. He later decided to retract that announcement, but directed another notice of termination to Ohio when he again formally announced that he was terminating his 2004-2005 employment agreement.

**<u>DENSON'S TWENTY YEARS OF</u>**
**<u>EMPLOYMENT RELATED CONTACTS WITH OHIO</u>**

27. As a Rohrer employee, Denson was subject to the direct supervision and control of Rohrer administrative personnel located in Wadsworth, Ohio.

28. He was required to follow all Rohrer policies and procedures, which were designed and implemented in, and enforced from, Wadsworth, Ohio.

29. For example, he was required to submit all vacation and personal time off requests to Wadsworth, Ohio, and obtain approval from administrative personnel located there.

30. Additionally, all human resources administrative functions were carried out in Ohio by human resources personnel in Ohio.

31. For example, all of Denson's payroll deductions, such as for medical benefits or for debts owed to the company or its plans were accomplished in Ohio.

32. Likewise, the administrative processes required to comply with wage garnishments, such as the one issued by a Pennsylvania court for $1,500 in past due spousal

support, and the one issued by the IRS for $18,710.08 in past due federal income taxes, were also carried out in Ohio.

33. Further, the personnel with the authority to make all decisions relating to Denson's employment, including the power to discipline or terminate Denson, were located in Wadsworth, Ohio.

34. Because Ohio is the epicenter of Rohrer, Denson constantly contacted and interacted with Ohio throughout his twenty (20) years of employment with Rohrer.

35. In fact, he could not have performed any of his job duties but for this daily interaction.

36. For example, Rohrer ensures quality customer service through the use of customer services teams consisting of a Regional Sales Manager, a customer service representative, and an order-writer.

37. No single member of a team can operate independently – each needs to communicate daily with the other members of the team to perform his or her job duties.

38. Denson, as a Regional Sales Manager was simply part of a team – two of the members of which were located in Ohio.

39. Although Denson's role as a Regional Sales Manager included finding new customers and making personal visits to existing customers, it also included identifying and addressing every current and future problem or need of the customer.

40. To accomplish these tasks, Denson was required to work on nearly a daily basis with the customer service representative and order-writer, both of whom were located at Rohrer's Wadsworth home office.

41. Denson and the customer service representative assigned to his region communicated nearly daily by phone, fax, or e-mail regarding current and prospective customer matters.

42. For example, every time a current or prospective customer requested a price quote from Denson, that information had to be communicated to the customer service representative in Ohio, and the quote was then created and issued from Rohrer's Ohio headquarters.

43. Additionally, every time a sales order was obtained by Denson, this fact had to be communicated to an order-writer who would physically enter the order into Rohrer's computer system in Ohio.

44. Often, depending on the product that was ordered, it would then be created in Rohrer's Ohio plant, and shipped to the customer from Ohio.

45. Denson also had weekly contact with his administrative assistant, Denise McCall, who was physically located in Ohio.

46. A majority of Denson's correspondence to his assigned customers including, for example, Stanley, was dictated to Ms. McCall in Ohio.

47. Denson then directed Ms. McCall to send such correspondence from Ohio to the customer.

48. Denson created hundreds of these Ohio originated correspondences during his employment with Rohrer.

49. Denson was also often physically present, including as recently as 2004, in Ohio to conduct employment related duties.

50. For example, for twenty (20) years, Denson was required to be present in Ohio at least twice almost every year: once in December to pick up his company car, and again in June to attend a sales meeting and sign his employment agreement.

**DENSON'S COMPENSATION AND PARTICIPATION IN EMPLOYEE BENEFIT PLANS**

51. Rohrer provided Denson cash compensation in the form of a salary and a percentage of the commissions from sales made to Rohrer's customers.

52. The annual amount of his cash compensation during his employment was typically between \$115,000 and \$160,000.

53. Accordingly, during his employment, Denson received over \$2 million in cash from Rohrer's Ohio headquarters.

54. All compensation decisions were made by Rohrer in Ohio and Denson's paychecks were issued to Denson from Ohio.

55. Any questions Denson may have had over twenty (20) years regarding his paychecks would be directed to and addressed by human resources personnel located in Ohio.

56. Denson was also provided an automobile, and was reimbursed for any business expenses, including entertainment and travel.

57. Reimbursements were made from Ohio after Denson, per Rohrer's policy, sent a reimbursement request form, along with supporting documentation, to Rohrer's Ohio headquarters.

58. Denson was also required, per Rohrer policy, to send a weekly payment to Ohio for any non-business use of the automobile Rohrer provided him.

59. This payment was accomplished in Ohio through a weekly payroll deduction, which was made in Ohio.

60. Denson also had the right to participate in Rohrer's employee benefit plans.

61. These plans included the Rohrer Corporation Health Benefit Plan (the "Health Benefit Plan") and the Rohrer Corporation Amended and Restated Profit Sharing Plan (the "Profit Sharing Plan").

62. All of Rohrer's employee benefit plans are located and administered in Ohio.

63. In order to participate in these plans, Denson was required to remit thousands of dollars to Ohio.

64. For example, in order for him and his family to continually participate in the Health Benefit Plan, Denson was required to pay a weekly premium.

65. This payment was made by Denson to Rohrer's third-party administrator, Benefits Services, Inc., which was also located in Ohio.

66. Further, claims for medical benefits were made throughout the course of Denson's employment with Rohrer. These claims were submitted to Ohio for processing and payment through Medical Mutual of Ohio, which is located in Ohio.

67. The Profit Sharing Plan, which is Rohrer's 401(k) plan, permitted Denson to make certain tax-deferred contributions to a retirement account located in Ohio.

68. Denson made thousands of dollars of contributions to the Profit Sharing Plan.

69. Denson also applied for and obtained two loans from the Ohio Profit Sharing Plan.

70. The first loan was made on October 13, 1998 and was in the amount of $38,195.00.

71. Denson was required to execute a promissory note in exchange for receiving this loan.

72. Accordingly, on October 13, 1998, Denson executed a contract in which he obligated himself to remit 520 payments in the amount of $114 each to Rohrer.

73. These payments began on October 30, 1998 and were to continue until October 10, 2008.

74. Denson applied for a second loan in the amount of $25,270.00 on June 30, 2004.

75. As with the first loan, Denson was required to execute a promissory note which obligated him to make 259 payments of $109.89 each to the plan.

76. Denson defaulted on his 401(k) loans when he terminated his employment with Rohrer.

77. Further, he took a hardship withdrawal from the Profit Sharing Plan on February 15, 2005 in the amount of $12,332.70 and made three other withdrawals relating to his termination of employment between June 8, 2005 and July 8, 2005 totaling $103,954.73.

**PACKAGING GRAPHICS CONTACTS WITH OHIO**

78. Packaging Graphics is a direct competitor of Rohrer engaged in essentially the same business.

79. It hired Denson in January 2006 to act as a salesman.

80. Rohrer wrote Packaging Graphics, and its parent company, the MATLET Group, LLC letters specifically informing them of Denson's restrictive covenants

81. Through these letters, Rohrer advised Packaging Graphics and its parent that if it encouraged or assisted Denson in breaching these covenants, it would be harmed and therefore be forced to pursue legal action

82. Since those letters were sent, and continuing until this Court entered a Temporary Restraining Order, Packaging Graphics, upon information and belief, encouraged and assisted Denson in breaching his agreement by improperly contacting Rohrer customers.

83. This has resulted in damage to Rohrer's relationships with its customers, and will continue to do so, and has resulted in the loss of sales, and will continue to do so.

Joanne Rohrer

Sworn before me and subscribed in my presence this 18 day of May, 2006.

Notary Public

NOTARIAL SEAL
STATE OF OHIO

Stephanie Grimes
Resident Summit County
Notary Public, State of Ohio
My Commission Expires: 08/17/10